1  RON BENDER (SBN 143364)
2  KRIKOR J. MESHEFEJIAN (SBN 255030)
   LINDSEY L. SMITH (SBN 265401)
3  LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
   10250 Constellation Boulevard, Suite 1700
4  Los Angeles, California 90067
   Telephone:  (310) 229-1234
5  Facsimile:  (310) 229-1244
   Email:  rb@lnbyb.com; kjm@lnbyb.com; lls@lnbyb.com
6
7  Proposed Counsel for Chapter 11 Debtors and Debtors in Possession

8              **UNITED STATES BANKRUPTCY COURT**
               **CENTRAL DISTRICT OF CALIFORNIA**
9                 **SANTA ANA DIVISION**

10 | In re: | Lead Case No.: 8:19-bk-12512-TA |
11 | SOCOCO, INC., | |
12 |           Debtor and Debtor in Possession. | (Proposed to be) Jointly administered with: 8:19-bk-12515-TA |
13 | | Chapter 11 Cases |
14 | In re: | **OMNIBUS DECLARATION OF MARC** |
15 | VISIBLEGAINS, INC., | **D. KIRSHBAUM IN SUPPORT OF** |
16 |           Debtor and Debtor in Possession. | **DEBTORS' EMERGENCY "FIRST** |
   | | **DAY" MOTIONS** |
17 | | |
18 | ☒ Affects both Debtors | Date:  TBD |
   | | Time:  TBD |
19 | ☐ Affects Sococo, Inc. only | Place:  Courtroom 5B |
20 | | 411 West Fourth Street |
   | ☐ Affects VisibleGains, Inc. only | Santa Ana, CA 92701 |
21

22

23

24

25

26

27

28

I, Marc D. Kirshbaum, hereby declare under penalty of perjury as follows:

1.    I am the chairman of the board of directors and the Chief Executive Officer of Sococo, Inc. ("Sococo"), and its wholly owned subsidiary VisibleGains, Inc. ("VG" and together with Sococo, the "Debtors").  I joined Sococo's board of directors in 2016, and I was appointed Chief Executive Officer in June 2017.  I am based in Santa Ana, California.

2.    In my capacity as Chief Executive Officer, I report directly to the three other directors of Sococo and its investors.  I make policy and strategy decisions on behalf of the Debtors.  I oversee their fiscal activity, and I manage the Debtors' vice presidents and other employees.  I work closely with senior stakeholders and I manage all legal and regulatory compliance issues of the Debtors.  I have personal knowledge of the facts set forth in this Declaration and could and if called as a witness, could and would testify competently with respect thereto.

A.    **Background Information**.

3.    On June 28, 2019, Sococo, Inc. ("Sococo") and its wholly owned subsidiary VisibleGains, Inc. ("VG" and together with Sococo, the "Debtors") commenced these bankruptcy cases by filing Voluntary Petitions for relief under Chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtors have operated their businesses and managed their affairs as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4.    Sococo offers a cloud-based, SaaS (software as a service), virtual office solution and platform where distributed teams come to work together each day, side-by-side, regardless of physical location.[1]  Sococo's product includes a unique "4D experience" where team members can be "seen" and radiate a "presence" on a virtual office map so that distributed teams can work effectively and seamlessly as if they were physically co-located in the same building or on the same floor, thereby recreating the personal proximity and functional benefit of a physical co-

---

[1] Sococo was founded in 2007/2008 under the name Social Communications Company, Inc. to develop and market a social networking product to bring two or more persons together in a virtual space for real time communication, or "RTC".  Sococo's product focus today is exclusively as a business-to-business platform.

located office for a fraction of the cost of real estate and travel expenses.  By way of this virtual workspace, team members are able to see their colleagues' avatars in rooms and possible meetings in real-time on the Sococo Map, and utilize voice, video, chat, and screen sharing features, to communicate and collaborate in real time, from any location.  Additional information, including a video demonstration of Sococo's distinguishing features, is available at www.sococo.com.

5.    Sococo's tools are applicable to, and have been utilized in, all kinds of organizations and functional teams, including information technology and software development organizations, the financial and professional services industries, educational institutions, health care organizations, and manufacturing.  Sococo charges a monthly license fee per customer, per user, averaging approximately $14.00 per month or $150.00 per year with an annual commitment. Currently, the Debtors have approximately 400 customers representing approximately 13,000 users, and generate approximately $180,000 per month in gross revenue.  Sococo itself is a distributed organization and presently has eighteen (18) employees through the United States, with California being the home of more employees (5) than any other state. Sococo's primary assets are comprised of its intellectual property and its customer contracts.  It wholly owns two subsidiaries: VG, which is also a chapter 11 debtor in possession and which Sococo acquired in 2015[2]; and Seminars2you Gmbh (a German company), which does not generate revenue and which is in the process of being dissolved.

6.    Despite the development and uniqueness of Sococo's product over the years, its revenue and cash flow from operations have been insufficient to support its current business operations as well as continued growth.  There have been many reasons for this, including the cost of developing and maintaining market-leading technology; the readiness of corporate

---

[2] VG owns technology and offers a product called Postwire that facilitates social communication for businesses, such as sharing media content, and integrating and connecting marketing and sales teams, to help businesses obtain sales and marketing information for the purpose of enhancing marketing and improving sales.  Its revenues are modest, though they generally cover all of VG's expenses.

infrastructures and maturity of Internet technology to support high speed, real-time communication; challenges of positioning Sococo vis-à-vis other entrenched and well-funded B2B communication and collaboration tools such as Slack, GoToMeeting, Zoom and Skype for Business; and the enormous costs of executing upon the necessary large-scale marketing strategy involving Sococo's product to reach profitability. The Debtors estimate that it would require an additional $6 million to $10 million of funding, which is not available, to fund an additional eighteen (18) months of operations to prove scalable market adoption and potentially get to break-even or profitability.

7. Based on my understanding of Sococo's operational and financial history, and my knowledge of Sococo's funding history, which I have learned by virtue of reviewing Sococo's books and records, as well as information I have requested and received from the Debtors' corporate counsel and AVG, since approximately 2012 through September 2018, Sococo's development, operations, and cash flow shortfalls have been primarily funded by AVG Ventures, LP[3] ("AVG") pursuant to equity contributions, and unsecured loans pursuant to note purchase agreements and related convertible promissory notes. All of AVG's outstanding loans as of September 2018 have been converted to equity interests. In total, as of September 2018, AVG had invested approximately $40 million in Sococo.

8. After September 2018, in order to continue to fund Sococo's cash flow shortfalls, AVG loaned additional money to Sococo pursuant to additional unsecured convertible notes on a month-by-month basis, totaling approximately $3,240,000, not including interest. As of the Petition Date, Sococo owes AVG the sum of approximately $3,348,480 in unsecured convertible

---

[3] There are six classes of equity interests in the Debtor, comprised of three classes of common stock (Common Series A, Common Series B, and Common Series C) all of which are junior to all preferred shares; and three classes of preferred stock (Preferred Series A, Preferred Series B, Preferred Series C). 100% of the Preferred Series C shares are owned by ESW Capital, LLC. The Preferred Series C shares have priority over all other equity interests in Sococo (the "Senior Preferred Equity Interest"). 92.6% of Preferred Series B shares are owned by AVG. 89.5% of Preferred Series A shares are owned by AVG.

debt.  The Debtors are not aware of any creditor, including AVG, with liens against any of either Debtors' assets.  The Debtors therefore believe that all of their assets are unencumbered.

9.     In 2018, in the interest of raising funds, Sococo engaged Global IP Law Group LLC, a reputable firm specializing in patent sales transactions, to market Sococo's intellectual property components, with the intention of selling noncore intellectual property with a license back to Sococo, and potentially licensing core intellectual property to parties in non-competitive industries (e.g., gaming).  Certain of Sococo's noncore intellectual property was sold in 2018 for approximately $300,000, and Sococo received a license to continue to use such noncore intellectual property.

10.     Additionally, the Sococo management team and board of directors, including me, has diligently pursued both strategic and institutional investment from third parties over the past two years based upon the company's product, technology and initial market adoption.  Multiple initial discussions and management presentations have been held at which I have been present and/or participated, with both strategic and institutional investors (e.g., private equity, venture capital, venture debt and more).  Despite these efforts to secure additional capital, no formal offers have been presented to the company.

11.     In early 2019, after AVG, which had already invested more than $40 million, was no longer in a position to make further investments in Sococo, Sococo engaged Sherwood Partners, Inc. ("Sherwood"), a premier business advisory firm to the restructuring industry, to market the Debtors' assets and businesses as going-concerns, and to identify potential funding sources for Sococo.  No investors or buyers were found at that time.

12.     Sococo re-engaged Sherwood in late Spring, 2019 to determine if any of the prior approached parties, and any new parties, had any interest in purchasing or investing in the business.  The Debtors' and Sherwood's efforts resulted in an offer from ESW Capital, LLC ("ESW"), which owns the Preferred Series C stock of SOcoco, which has priority over all other equity interests in Sococo (the "Senior Preferred Equity Interest").  With the exception of ESW, no investors or buyers were found.  After extensive negotiations between Sococo, ESW and

AVG, ESW agreed to serve as a plan sponsor of the Debtors in the Chapter 11 Cases and to fund the Debtors' proposed Joint Chapter 11 Plan of Reorganization (the "<u>Plan</u>") provided the Plan can be quickly confirmed.

13.    The Plan is the result of extensive discussions between the Debtors, AVG, and ESW, and presents the best possible outcome for creditors.  The Plan implements a pre-packaged restructuring that is being sponsored by ESW with the support of the Debtors' largest creditor, AVG.  The Plan was solicited prior to the commencement of the Debtors' bankruptcy cases.

14.    As set forth in further detail in the Plan, on the effective date of the Plan, ESW has agreed to make a contribution of new cash to the Debtors on the effective date of the Plan in an amount computed as $1,000,000 *plus* the amount of the Debtors' outstanding accounts receivable existing on the effective date of the Plan *less* all accounts payable and accrued liabilities existing on the effective date of the Plan, which ESW has agreed to assume and to pay (collectively, the "<u>New Cash Contribution</u>"), plus provide other consideration to the Debtors' estates in the form of 5% of net proceeds of potential patent litigation during a five year period after the effective date (as specified in the Plan) (the "<u>IP Payment</u>").  The Debtors' bankruptcy estates will also be retaining all of their own cash for the benefit of the Debtors' creditors.  The New Cash Contribution plus the Debtors' funds existing on the effective date of the Plan plus any IP Payments (collectively, the "<u>Plan Funds</u>") will be used to effectuate the terms of the Plan and to fund the Plan.  Additionally, under the Plan, in the event that allowed general unsecured claims exceed general unsecured claims as reflected in the Debtors' Schedules of Assets and Liabilities, the Reorganized Debtors shall assume or otherwise pay all such allowed general unsecured claims.

15.    Under the Plan, AVG has voluntarily agreed to permit all other holders of allowed claims to be paid in cash in full from the Plan Funds prior to AVG receiving any recovery on its claim.  As a result of AVG's voluntary agreement, all other holders of allowed claims will receive a full cash recovery on the effective date of the Plan or, in the event of any disputed claims, as soon after the effective date as such claim holders obtain allowed claims.

6

16.     In consideration for the New Cash Contribution, and on account of in exchange for its Senior Preferred Equity Interest (i.e., its Preferred Series C Shares), ESW[4] shall receive 100% of the new equity of the "Reorganized Debtors".   The Debtors believe that this is a strategic acquisition for ESW as Sococo's product and technology is complementary to other products and businesses of ESW.   No other distributions will be made to any other holders of equity interests. On the effective date of the Plan, all of the existing equity interests in Sococo shall be deemed retired, cancelled and extinguished and of no further force or effect.   Except as set forth above with respect to the Senior Preferred Equity Interest, equity holders in the Debtors will not receive any distribution or retain any property on account of such equity interests.

17.     It is clear from the Debtors' pre-petition marketing efforts that there is no buyer or investor willing to purchase the Debtors' assets or to acquire the Equity of the Reorganized Debtors for enough money for there to be any distribution to the holders of equity interests.   It is also clear from the Debtors' pre-petition marketing efforts that there is no buyer or investor willing to purchase the Debtors' assets or to acquire the equity of the Reorganized Debtors for more money than has been offered by ESW.   The Debtors therefore believe that the Plan clearly represents the best possible outcome for creditors.

18.     As a result of the Debtors' limited funds, continuous and significant operating losses, and detriment to the Debtors' business of an extended stay in Chapter 11, the willingness of ESW to make the New Cash Contribution to the Debtors combined with the willingness of AVG to permit all other holders of allowed claims to be paid in cash in full from the Plan Funds prior to AVG receiving any recovery on its claim (without which the construct of the Plan would not work) are dependent upon the Debtors' obtaining an order of the Court confirming the Plan by no later than July 19, 2019.   It is therefore absolutely crucial that the Debtors be able to obtain an order of the Court confirming the Plan by no later than July 19, 2019 and hopefully earlier because the earlier the Debtors can obtain an entered order confirming the Plan the greater the

---

[4] ESW is not an insider of the Debtors, and has not served as an officer or director of the Debtors before or during the pendency of the Chapter 11 Cases.

recovery for AVG.  Prior to the Petition Date, the Debtors, ESW and AVG entered into the attached agreement (the "<u>RSA</u>") under which, among other things, ESW has agreed to make the New Cash Contribution and vote to accept the Plan and AVG has agreed to vote to accept the Plan.  A copy of the RSA is attached hereto as Exhibit "1".

19.    Given the extent of their operating losses and inability to continue to fund them, if not for the confirmed Plan, the Debtors would be forced to immediately shut down and liquidate, which would result in a far worse result for creditors than the Plan.  Attached hereto as Exhibit "2" is the Debtors' projected cash flow statement/budget for the following four weeks.  As explained above, all creditors other than AVG are being paid in full under the Plan and therefore are deemed to accept the Plan, and AVG (as the sole voting creditor in the Chapter 11 Cases) has agreed to vote to accept the Plan and is represented by sophisticated bankruptcy counsel.

20.    Accordingly, and in order to expedite and minimize the costs of administration of these cases, the Debtors solicited votes on the Plan prior to the Petition Date and are seeking confirmation of the Plan on as expeditious a timeframe possible, but certainly no later than July 19, 2019.  Moreover, the Debtors have already filed their Schedules of Assets and Liabilities, Statement of Financial Affairs, and related documents; and submitted *all* of their administrative compliance documents to the United States Trustee.  In connection with administering these as expeditiously as possible, the Debtors have also filed this Motion and an emergency motion authorizing the Debtors to maintain their existing cash management system in order to ensure minimal disruption to the Debtors' daily transactions and operations.

**B.**    **The Emergency Motion Setting Expedited Case, Disclosure Statement And Plan Confirmation Deadlines.**

21.    Pursuant to the *Debtors' Emergency Motion For: (1) Expedited Case Status Conference To Set Case Deadlines; (2) Order Conditionally Approving Disclosure Statement; And (3) Order Setting Plan Confirmation Hearing And Related Deadlines*, the Debtors respectfully request that the Court enter an order:

a.  Setting an emergency case status conference in this case;

b.  Setting the deadline for creditors to file proofs of claim as July 26, 2019;

c.  Setting a hearing on or before July 16, 2019, for the Court to consider confirmation of the Debtors' Joint Pre-Packaged Chapter 11 Plan of Reorganization (the "Plan") which the Debtors solicited prior to these bankruptcy filings, and approval of the Debtors' prepetition solicitation of the Plan and Disclosure Statement describing the Plan;

d.  Setting a hearing on or before July 16, 2019 for the Court to consider other relief related to confirmation, including assumption or rejection of executory contract and rejection of the Debtors' 401(k) plan;

e.  Setting a deadline for the Debtors to provide notice of the hearing on confirmation of the Plan and serve such notice, the Plan, and the Disclosure Statement, on all parties entitled to receive such documents;

f.  Setting a deadline for the Debtors to file a brief in support of confirmation of the Plan and declarations in support of confirmation of the Plan;

g.  Setting a deadline to object to confirmation of the Plan; and

h.  Granting such further relief as the Court deems just and proper.

**C.**  **The Emergency Motion Authorizing The Debtors To Maintain Their Existing Cash Management System.**

22.  In the ordinary course of business, VG utilizes its own revenue to pay for its own expenses, and up-streams any remaining revenue after the payment of expenses, or, net revenue, to its 100% owner, Sococo.  Sococo utilizes such net revenue in the ordinary course of its business operations.  By way of this Motion, the Debtors request authority to maintain this aspect of their cash management system.

23.  The Debtors collectively have three bank accounts (two belonging to Sococo, and one belonging to VG) (the "Bank Accounts") which they utilize in the ordinary course of their

business, on a daily basis, pursuant to which the Debtors transact with customers and vendors.[5] All payments by customers of the Debtors are deposited into one of the accounts – Sococo's customers' payments are deposited into Sococo's accounts, and VG's customers' payments are deposited into VG's account, including through credit card transactions and other electronic forms of payment.   Importantly, many of the Debtors' customers are subscribed to the automatic payment of the fees they pay the Debtors.   Requiring the Debtors to close the accounts would result in the delay in the receipt of payments, disruptions to operations, and delays in payments to important vendors and employees.   Re-establishing and re-connecting deposits and billings to new accounts would be impractical, disruptive, costly, and an inefficient use of the Debtors' resources.[6]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.   Executed this 28th day of June, 2019, at Santa Ana, California.

_____

MARC D. KIRSHBAUM

---

[5] Sococo's Bank Accounts are located at Bank of America (Account No. ********4456) and Merrill Lynch (Account No. ***-*1W57).   VG's Bank Account is located at Eastern Bank (Account No. *******1179).

[6] The Debtors pay some of their vendors using automatic payment mechanisms connected to their respective debit cards with Bank of America, in the case of Sococo, and Eastern bank, in the case of VG.   The Debtors will cancel their existing debit cards and block any automatic payments to vendors to ensure no that automatic payments are made on account of any pre-petition debt.

# EXHIBIT "1"

## RESTRUCTURING SUPPORT AGREEMENT

This Restructuring Support Agreement, dated as of June 27, 2019 (as the same may be amended, modified or extended, and including the exhibits hereto, the **"Agreement"**) is entered into by and among Sococo, Inc. and VisibleGains, Inc. (collectively, the **"Debtors"**), ESW Capital, LLC, in its capacity as the proposed plan sponsor of a joint pre-packaged plan of reorganization of the Debtors (**"ESW"** the **"Plan Sponsor"**) and AVG Ventures, LP ( **"AVG,"** and together with the Plan Sponsor and the Debtors, collectively, the **"Parties"**).

### RECITALS

**WHEREAS**, on June 28, 2019 or the first possible date thereafter, the Debtors intend to file voluntary petitions under chapter 11 of the Bankruptcy Code (the **"Bankruptcy Petitions"**) in the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the **"Bankruptcy Court"**);

**WHEREAS**, prior to the date hereof, the Debtors, AVG and the Plan Sponsor have engaged in good faith, arm's length negotiations that have led to an agreement regarding the Plan,[1] attached hereto as **Exhibit 1**;

**WHEREAS,** as set forth in the Plan, and subject to the terms and conditions contained therein, the Parties have agreed that the restructuring of the Debtors will be effectuated through the Plan with such modifications as the Parties may reasonably agree to;

**WHEREAS**, this Agreement sets forth the agreement among the Parties concerning their commitment, subject to the terms and conditions hereof and thereof, to pursue, support, implement and vote to accept the Plan; and

**WHEREAS**, the alternative to the consummation of the Plan is likely a liquidation of the Debtors' assets and diminished returns to the Debtors' estates and creditors.

**NOW, THEREFORE,** in consideration of the premises and the mutual covenants and agreements contained herein, and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be bound hereby, the Parties agree as follows:

### 1. Definitions.

In addition to the terms defined elsewhere herein, for purposes of this Agreement, the following terms shall have the meanings specified in this Section 1 when used herein:

**"Agreement"** shall have the meaning ascribed to it in the preamble.

**"AVG"** shall have the meaning ascribed to it in the preamble.

---

[1] Capitalized terms used herein without definition shall have the meaning ascribed to them in the Plan. In the event of any conflict between the terms of the Plan and this Agreement, the terms of this Agreement shall control.

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect on the Petition Date, together with any amendments thereto subsequent to the Petition Date, to the extent that any such amendments are applicable to chapter 11 cases.

"**Bankruptcy Court**" shall have the meaning ascribed to it in the Recitals.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

"**Chapter 11 Cases**" shall mean the chapter 11 bankruptcy cases commencing upon the filing of the Bankruptcy Petitions in the Bankruptcy Court.

"**Claim**" shall have the meaning ascribed to such term in the Bankruptcy Code.

"**Confirmation Order**" means an order entered by the Bankruptcy Court, confirming the Plan, including all exhibits, appendices, supplements, and related documents, which shall be consistent in all material respects with this Agreement and the Plan and shall otherwise be reasonably acceptable to the Parties.

"**Debtors**" shall have the meaning ascribed to it in the preamble.

"**Definitive Documents**" means the Plan, the Disclosure Statement, the Confirmation Order and any and all other documents (including any related agreements, instruments, schedules or exhibits) that are contemplated by the Plan or that are otherwise necessary or desirable to implement, or otherwise relate to, the Plan, including but not limited to this Agreement and all exhibits, schedules, and other documents relating to this Agreement, the Plan, and the Disclosure Statement, together with any amendments or supplements to any of the foregoing, all of which shall be consistent in all material respects with this Agreement and the Plan and in form and substance reasonably acceptable to the Parties;

"**Disclosure Statement**" means a disclosure statement in respect of the Plan that complies with section 1125 of the Bankruptcy Code and that is consistent in all material respects with the terms of this Agreement and the Plan, and shall otherwise be reasonably acceptable in form and substance to the Parties.

"**Effective Date**" shall mean the date on which the Plan becomes effective.

"**Estates**" means the chapter 11 estates created under section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

"**ESW**" shall have the meaning ascribed to it in the preamble.

"**Intellectual Property**" means intellectual property, including, without limitation, the following: (i) all patents and patent applications, domestic or foreign, all licenses relating to any of the foregoing and all income and royalties with respect to any licenses, all rights to sue for past, present or future infringement thereof, all rights arising therefrom and pertaining thereto and all reissues, divisions, continuations, renewals, extensions and continuations-in-part thereof; (ii) all copyrights and applications for copyright, domestic or foreign, together with the underlying works of authorship (including titles), whether or not the

underlying works of authorship have been published and whether said copyrights are statutory or arise under the common law, and all other rights and works of authorship, all computer programs, computer databases, computer program flow diagrams, source codes, object codes and all tangible property embodying or incorporating any copyrights, all licenses relating to any of the foregoing and all income and royalties with respect to any licenses, and all other rights, claims and demands in any way relating to any such copyrights or works, including royalties and rights to sue for past, present or future infringement, and all rights of renewal and extension of copyright; (iii) all state (including common law), federal and foreign trademarks, service marks and trade names, and applications for registration of such trademarks, service marks and trade names, all licenses relating to any of the foregoing and all income and royalties with respect to any licenses, whether registered or unregistered and wherever registered, all rights to sue for past, present or future infringement or unconsented use thereof, all rights arising therefrom and pertaining thereto and all reissues, extensions and renewals thereof; (iv) all trade secrets, trade dress, trade styles, logos, other source of business identifiers, mask-works, mask-work registrations, mask-work applications, software, confidential and proprietary information, customer lists, license rights, advertising materials, operating manuals, methods, processes, know-how, algorithms, formulae, databases, quality control procedures, product, service and technical specifications, operating, production and quality control manuals, sales literature, drawings, specifications, blue prints, descriptions, inventions, name plates, catalogs, internet websites, and internet domain names and associated URL addresses; (v) the entire goodwill of or associated with the businesses now or hereafter conducted by the Debtors connected with and symbolized by any of the aforementioned properties and assets; and (vi) all accounts, payment intangibles, commercial tort claims and other rights to payment, all other proprietary rights or other intellectual or other similar property, and all other general intangibles associated with or arising out of any of the aforementioned properties and assets and not otherwise described above, and all proceeds of any intellectual property.

"**Parties**" shall have the meaning ascribed to it in the preamble.

"**Petition Date**" shall mean June 28, 2019.

"**Plan**" shall mean a plan of reorganization consistent with the draft plan of reorganization attached hereto as Exhibit 1.

"**Plan Sponsor**" shall have the meaning ascribed to it in the preamble.

"**Plan Support Period**" shall mean the period commencing on the date this Agreement has been executed by all Parties and ending on the date on which this Agreement is terminated in accordance with Section 10 hereof.

"**Solicitation**" means the solicitation of votes for the Plan pursuant to sections 1125 and 1126 of the Bankruptcy Code.

"**support**" or "**support, and not object**" shall mean to affirmatively support and to use commercially reasonable efforts and take all reasonable, necessary and appropriate actions or commercially reasonable actions requested by the Debtors in furtherance of, and to not take any action to hinder, delay or impede, the action to be taken, or the relief sought; provided,

3

however, there shall be no obligation to incur (or suffer) any costs or expenses with respect to the same unless specifically agreed to in writing by the party that would incur such costs and expenses.

"**Termination Event**" has the meaning set forth in Section 10 hereof.

2.     **Agreement of the Plan Sponsor.**

a)     Prosecution of the Plan.  Upon the terms and subject to the conditions hereof, the Plan Sponsor agrees to comply with the following covenants and that, for the duration of the Plan Support Period, it shall:

i)      Identify which executory contracts and unexpired leases will be assumed or rejected by the Petition Date, but subject to the Plan Sponsor's right to modify such list at any time prior to the Effective Date of the Plan.

ii)     Support and take all actions necessary or reasonably requested by the Debtors to facilitate implementation and consummation of the Plan, including the filing of the Plan, the Plan Supplement, an accompanying Disclosure Statement and all other documents or pleadings required to be filed in connection with the Solicitation of votes on, and confirmation of, the Plan.

iii)    (A) Not support, propose, file, or vote for, directly or indirectly, any other restructuring alternatives, workout, or chapter 11 plan for the Debtors or take any action, directly or indirectly, that is inconsistent with this Agreement or the Plan, or that would unreasonably delay approvals of the Disclosure Statement or confirmation or consummation of the Plan, or (B) object to, delay, impede, or take any other action to interfere with the Disclosure Statement or confirmation or consummation of the Plan.

iv)     To the extent any legal, financial, or structural impediment arises that would prevent, hinder, or delay the consummation of the Plan, negotiate in good faith appropriate additional or alternative provisions to address any such impediment; provided that nothing herein shall impose on the Plan Sponsor any requirement to agree to a) extend the Termination Date, or b) increase the Consideration, or c) waive or modify any material condition or provision of the Plan, this Agreement, or any other related document.

b)     Definitive Documents.  The Plan Sponsor agrees to negotiate in good faith each of the Definitive Documents; provided that nothing herein shall impose on the Plan Sponsor any requirement to agree to a) extend the Termination Date, b) increase the Consideration, or c) waive or modify any material condition or provision of the Definitive Documents.

4

3.      **Agreement of AVG.**

a)      <u>Prosecution of the Plan</u>.  Upon the terms and subject to the conditions hereof, AVG agrees to comply with the following covenants and that, for the duration of the Plan Support Period, it shall:

i)      Agree to subordinate the treatment of or any recovery on account of its allowed claim to all other allowed claims against the Debtors, as further provided for under the Plan.

ii)      Support and take all actions necessary or reasonably requested by the Debtors to facilitate implementation and consummation of the Plan, including the filing of the Plan, an accompanying Disclosure Statement and all other documents or pleadings required to be filed in connection with the Solicitation of votes on, and confirmation of, the Plan.

iii)      (A) Not support, propose, file, or vote for, directly or indirectly, any other restructuring alternatives, workout, or chapter 11 plan for the Debtors or take any action, directly or indirectly, that is inconsistent with this Agreement or the Plan, or that would unreasonably delay approvals of the Disclosure Statement or confirmation or consummation of the Plan., or (B) object to, delay, impede, or take any other action to interfere with the Disclosure Statement or confirmation or consummation of the Plan.

iv)      To the extent any legal, financial, or structural impediment arises that would prevent, hinder, or delay the consummation of the Plan, negotiate in good faith appropriate additional or alternative provisions to address any such impediment;

b)      <u>Voting</u>.  Timely vote or cause to be voted its Claims to accept the Plan and not change or withdraw (or cause to be changed or withdrawn) such vote.

c)      <u>Definitive Documents</u>.  AVG agrees to negotiate in good faith each of the Definitive Documents.

4.      **Agreements of the Debtors.**

a)      <u>Filing of Disclosure Statement and Plan</u>.  On or before June 28, 2019, the Debtors shall file the Disclosure Statement and Plan.  The Debtors shall attach a copy of this Agreement as an exhibit to the Disclosure Statement.  While the Debtors will not be seeking separate Bankruptcy Court approval of this Agreement, all of the Parties intend to be bound to the terms of this Agreement in connection with the Chapter 11 Cases and the Plan.

b)      <u>Support of the Plan</u>.  Upon the terms and subject to the conditions hereof and except to the extent that the Debtors' support of this Agreement and/or the Plan requires the Debtors to take a position or action that is contrary to the Debtors' fiduciary duty owed to

creditors and other stakeholders, the Debtors agree that, for the duration of the Plan Support Period and subject to the Debtors' fiduciary obligations, they shall:

      i)      Support the Plan Sponsor as reasonably necessary in prosecuting the Plan.

      ii)      Keep proper books of record and account in which full, true and correct entries are made of all dealings and transactions in relation to their business and property and all legal requirements; and, upon the reasonable request of the Plan Sponsor, provide copies of, or access to, their books and records, and to discuss the business, operations, assets and financial and other condition of the Debtors with officers and employees thereof and with their independent certified public accountants (but excluding privileged information) as is reasonably related to this Agreement, the Plan, or any other matter, in the reasonable discretion of the Plan Sponsor.

      iii)      Not support or solicit, directly or indirectly, any other restructuring alternatives or take any action inconsistent with the Plan.

      iv)      Not engage in any negotiations with any other party in connection with a restructuring, reorganization or liquidation of the Debtors other than as contemplated by the Plan.

      v)      Not file any documents or pleadings in the Bankruptcy Court or any other forum that are inconsistent with the Plan.

      vi)      Not abandon, sell, assign, or grant a security interest in, any Intellectual Property owned by Debtors and material to the operation of their business.

      vii)      Not grant to any person or entity an exclusive license with respect to any Intellectual Property owned by the Debtors and material to the operation of their business.

      viii)      Not take any action, or as to insiders, to permit any action, that would result in an "ownership change" as such term is used in section 382 of title 26 of the United States Code.

      ix)      Not file any motion, without the reasonable consent of the Plan Sponsor, (a) authorizing or directing the assumption or rejection of an executory contract or unexpired lease or (b) authorizing the settlement of any claim or controversy that would be inconsistent with the Plan or would reduce the value of the Debtors or the Reorganized Debtors in the reasonable opinion of the Plan Sponsor.

    Notwithstanding anything to the contrary herein, nothing herein requires the Debtors or their boards of directors to breach any fiduciary obligations they have under applicable law;

*provided that* the Debtors must provide notice to the Plan Sponsor of the Debtors' material communications, within no later than three (3) business days of the Debtors' first such communication, with any other party which expresses interest in acquiring the Debtors or any of their material assets. Further, the Debtors may only terminate this Agreement after providing seventy-two (72) hours' written notice (the "**Notice Period**") to the Plan Sponsor with the material terms and conditions of any binding written offer for the Debtors (the "**Alternative Offer**"). The Plan Sponsor will have the right to match the Alternative Offer during the Notice Period.

5. **Good Faith Cooperation.**

Each Party shall cooperate with each other in good faith and shall coordinate its activities (to the extent practicable) in respect of all matters concerning the pursuit, approval, implementation and consummation of the Plan. Furthermore, each Party shall take such action (including negotiating, drafting, executing and delivering any Definitive Documents and any other agreements and making and filing any required regulatory filings) as may be reasonably necessary to carry out the purposes and intent of this Agreement and the Plan and shall exercise commercially reasonable efforts with respect to the pursuit, approval, and implementation of this Agreement and the Plan. Furthermore, subject to the terms hereof, each Party shall take such action as may be reasonably necessary or reasonably requested by the other Parties to carry out the purposes and intent of this Agreement, and shall refrain from taking any action that would frustrate the purposes or intent of this Agreement.

6. **Conditions to Effectiveness.**

This Agreement shall become effective upon the release and delivery of signature pages to counsel to the Parties hereto, duly executed by each of the Parties. Delivery by telecopier or electronic mail of an executed counterpart of a signature page to this Agreement shall be effective as delivery of an original executed counterpart hereof.

7. **Conditions to Consummation of the Transactions Contemplated Hereby.**

a) The obligations of the Plan Sponsor and AVG to consummate the transactions contemplated by this Agreement and the Plan are subject to the satisfaction of the following conditions:

i) The Debtors shall not have failed to comply with any of their material obligations set forth in this Agreement;

ii) negotiation and execution of the applicable Definitive Documents; and

iii) all authorizations, consents and regulatory approvals required from parties other than the Parties hereto, if any, in connection with implementation of the Plan shall have been obtained.

b) The obligations of the Debtors to consummate the transactions contemplated by this Agreement are subject to the satisfaction of the following conditions:

i) The Plan Sponsor and AVG shall not have failed to comply with any of their respective material obligations set forth in this Agreement;

ii) negotiation and execution of the applicable Definitive Documents to which each of the Debtors is a party by the counterparties thereto; and

iii) all authorizations, consents and regulatory approvals required from parties other than the Parties hereto, if any, in connection with implementation of the transactions shall have been obtained.

No Party hereto may invoke the failure of a condition set forth herein whose breach shall have been the cause of, or shall have resulted in, the failure of such condition.

## 8. No Solicitation.

THIS AGREEMENT AND THE TRANSACTIONS CONTEMPLATED HEREIN AND IN THE PLAN ARE THE PRODUCT OF NEGOTIATIONS BETWEEN THE PARTIES AND THEIR RESPECTIVE REPRESENTATIVES. EACH PARTY HEREBY ACKNOWLEDGES THAT THIS AGREEMENT IS NOT AND SHALL NOT BE DEEMED TO BE A SOLICITATION OF VOTES FOR THE ACCEPTANCE OF THE PLAN OR REJECTION OF ANY OTHER CHAPTER 11 PLAN FOR PURPOSES OF SECTION 1125 OR 1126 OF THE BANKRUPTCY CODE OR OTHERWISE, IT BEING UNDERSTOOD THAT SUCH A SOLICITATION WILL ONLY BE MADE IN COMPLIANCE WITH APPLICABLE PROVISIONS OF BANKRUPTCY, SECURITIES AND/OR OTHER APPLICABLBE LAWS. NOTHING IN THIS AGREEMENT SHALL REQUIRE ANY PARTY TO TAKE ANY ACTION PROHIBITED BY THE BANKRUPTCY CODE, THE SECURITIES ACT OF 1933 (OR ANY RULE OR REGULATIONS PROMULGATED THEREUNDER), THE SECURITIES EXCHANGE ACT OF 1934 (ANY RULE OR REGULATIONS PROMULGATED THEREUNDER), OR BY ANY OTHER APPLICABLE LAW OR REGULATION OR BY AN ORDER OR DIRECTION OF ANY COURT OR ANY STATE OR FEDERAL GOVERNMENTAL AUTHORITY.

## 9. Representations and Warranties.

Each Party represents, warrants and covenants to each other Party, severally on behalf of itself and not on behalf of any other Party, that the following statements are true, correct and complete as of the date of this Agreement:

a) it is duly organized, validly existing, and in good standing under the laws of the jurisdiction of its organization, and has all requisite corporate, partnership, or limited liability company power and authority to enter into this Agreement and to carry out the transactions contemplated by, and perform its respective obligations under, this Agreement;

b) the execution, delivery and performance of this Agreement by such Party does not and shall not (i) violate any provision of law, rule, or regulation applicable to it or any

of its subsidiaries or its organizational documents or those of any of its subsidiaries or (ii) conflict with, result in a breach of, or constitute (with due notice or lapse of time or both) a default under any material contractual obligations to which it or any of its subsidiaries is a party or under its organizational documents;

c)    the execution, delivery, and performance by it of this Agreement does not and shall not require any registration or filing with, consent or approval of, or notice to, or other action to, with or by, any federal, state, or other governmental authority or regulatory body, except such filing as may be necessary and/or required for disclosure by the Securities and Exchange Commission or pursuant to state securities or "blue sky" laws, and approval by the Bankruptcy Court of the Plan; and

d)    this Agreement is the legally valid and binding obligation of such Party, enforceable against it in accordance with its terms, except as enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium, or other similar laws, both foreign and domestic, relating to or limiting creditors' rights generally or by equitable principles relating to enforceability.

## 10.    **Termination.**

This Agreement shall automatically terminate five (5) business days after delivery of written notice to all other Parties to this Agreement after the occurrence and during the continuance of a Termination Event (as defined below), unless the relevant Termination Event is cured by the Debtors, or waived or extended by all the Parties:

a)    The Debtors fail to provide the Plan Sponsor and its agents with reasonable access at reasonable times to the Debtors' books and records and management through the Effective Date for the purposes of conducting such due diligence as the Plan Sponsor reasonably deems necessary or advisable (but excluding privileged information) with reasonable notice to the Debtors;

b)    The Debtors' fail to file the Plan and the Disclosure Statement by June 28, 2019;

c)    The Debtors' fail to obtain from the Bankruptcy Court the Confirmation Order by July 19, 2019, consistent with the Plan (and such amendments and modifications as have been effected in accordance with the terms hereof), subject only to the Bankruptcy Court's docket;

d)    The Debtors file a motion for entry of an order approving sale procedures or an alternative sale transaction, or file a plan and/or disclosure statement, that is not reasonably acceptable to the Plan Sponsor;

e)    The Bankruptcy Court enters an order approving an alternative sale transaction or confirmation of a competing plan of reorganization;

f)    One or more of the Chapter 11 Cases is converted to a chapter 7 case;

g)    Mutual written agreement of the Debtors and the Plan Sponsor;

h)    The Effective Date has not occurred by July 24, 2019; or

i)      The issuance by any governmental authority, including the Bankruptcy Court in respect of the Chapter 11 Cases, or any other regulatory authority or court of competent jurisdiction, of any ruling or order enjoining the consummation of a material portion of the transactions contemplated hereby and that is inconsistent with this Agreement, (each, a "**Termination Event**").

Upon the termination of this Agreement: (i) the Parties' respective obligations hereunder shall thereafter cease to exist (except for those which by their terms expressly are intended to survive such termination), (ii) in such event, each Party, as the case may be, in its reasonable discretion and without limiting its other rights, may change or withdraw (or cause to be changed or withdrawn) any consents previously given by it or votes previously cast by it, as the case may be, in favor of the Plan, (iii) in the case of each non-breaching Party, all claims of such Party shall be fully preserved, (iv) each non-breaching Party shall return to the *status quo ante*, and (v) any breach of this Agreement by one or more Parties shall not create any rights or remedies against any non-breaching Party.  No Party shall have any liability as a result of any valid termination of this Agreement in accordance with the terms hereof.  Notwithstanding any other provision hereof, no termination of this Agreement shall relieve a Party of liability for any breach occurring on or prior to such termination.

Notwithstanding the foregoing, if the Plan Sponsor or AVG believes that a Termination Event has occurred, it shall provide the Debtors with notice of the purported Termination Event at least two (2) business days after such Termination Event, or as soon thereafter as is reasonably practicable, and the Debtors shall have the opportunity to cure such Termination Event in a manner reasonably satisfactory to such Party.

## 11.    No Third-Party Beneficiaries.

This Agreement is solely for the benefit of the Parties hereto and no other person or entity shall be a third-party beneficiary hereof.

## 12.    Entire Agreement.

This Agreement (including the exhibits hereto and made a part hereof) constitutes the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior agreements and understandings, written and oral, between the Parties with respect to the transactions contemplated hereby.

## 13.    Amendments.

a)      Except as otherwise provided herein, this Agreement may be amended only upon the written approval of (i) the Plan Sponsor, (ii) AVG, and (iii) the Debtors.

b)      No waiver of any of the provisions of this Agreement shall be deemed or constitute a waiver of any other provision of this Agreement, whether or not similar, nor shall any waiver be deemed a continuing waiver.  No modification or change to this Agreement or the applicable Definitive Documents shall release any Party from obligations under this Agreement if such Definitive Documents remain substantially similar in all economic and other respects to this Agreement and are not inconsistent with this Agreement, and if such modification or

change does not, or cannot reasonably be expected to, negatively impact the material economic recovery or other rights in any respect that such Party will receive under such Definitive Documents.

### 14. <u>Governing Law; Jurisdiction.</u>

This Agreement shall be governed by and construed in accordance with the laws of the State of California without regard to any provision that would require the application of the law of any other jurisdiction. Each Party irrevocably and unconditionally (a) agrees that any legal action, suit or proceeding (collectively, **"Actions"**) against it with respect to any matter arising under, out of or in connection with, this Agreement or the restructuring, or for recognition or enforcement of any judgment rendered in any such Action, shall be brought in the Bankruptcy Court, and (b) accepts and submits itself to the exclusive jurisdiction of the Bankruptcy Court, generally and unconditionally, with respect to any such Action. EACH PARTY HERETO UNCONDITIONALLY WAIVES TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING REFERRED TO ABOVE. Notwithstanding the foregoing, during the pendency of the Chapter 11 Cases, the Bankruptcy Court shall have exclusive jurisdiction of all matters arising under, out of, or in connection with this Agreement and the Plan.

### 15. <u>Specific Performance.</u>

The Parties hereto acknowledge and agree that money damages may not be an adequate remedy for any breach of the terms of this Agreement and, accordingly, (a) agree that each non-breaching Party is entitled to specific performance and injunctive or other equitable relief as a remedy of any such breach, including an order of the Bankruptcy Court or other court of competent jurisdiction requiring any Party to comply promptly with any of its obligations hereunder, and (b) waive any requirement for the securing or posting of a bond in connection with such remedy; <u>provided</u>, <u>however</u>, the foregoing shall not be the Parties' exclusive remedy and the Parties may pursue any and all remedies available at law or equity.

### 16. <u>Reservation of Rights.</u>

Nothing herein shall be deemed an admission of any kind with respect to any other proceeding. If the transactions contemplated herein are not consummated, or this Agreement is terminated for any reason, the Parties fully reserve any and all of their rights. Pursuant to Rule 408 of the Federal Rules of Evidence, any applicable state rules of evidence and any other applicable law, foreign or domestic, this Agreement and all negotiations relating thereto shall not be admissible into evidence in any proceeding other than a proceeding to enforce its terms or in the Chapter 11 Cases.

### 17. <u>Representation by Counsel.</u>

Each Party hereto acknowledges that it has had the opportunity to be represented by counsel in connection with this Agreement and the transactions contemplated by this Agreement. Accordingly, any rule of law or any legal decision that would provide any Party hereto with a defense to the enforcement of the terms of this Agreement against such Party based upon lack of legal counsel shall have no application and is expressly waived.

11

18. **Successors and Assigns.**

This Agreement shall bind and inure to the benefit of the Parties and their respective affiliates, designees, successors, assigns, heirs, executors, administrators and representatives.

19. **Costs and Expenses.**

Each Party shall bear its own costs and expenses of negotiating and preparing this Agreement and the Definitive Documents.

20. **Counterparts.**

This Agreement may be executed in any number of counterparts and by different Parties hereto in separate counterparts and by facsimile or other electronic transmission, with the same effect as if all Parties had signed the same document. All such counterparts shall be deemed an original, shall be construed together and shall constitute one and the same instrument.

21. **Severability.**

Any term or provision of this Agreement that is invalid or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining terms and provisions of this Agreement or affecting the validity or enforceability of any of the terms or provisions of this Agreement in any other jurisdiction. If any provision of this Agreement is so broad as to be unenforceable, the provision shall be interpreted to be only as broad as is enforceable.

22. **Headings.**

The headings of the paragraphs of this Agreement are inserted for convenience only and shall not affect the interpretation hereof.

23. **Notice.**

Any notices or other communications required or permitted under, or otherwise in connection with, this Agreement shall be in writing and shall be deemed to have been duly given when delivered in person or upon confirmation of receipt when transmitted by electronic mail (but only if followed by transmittal by national overnight courier or hand for delivery on the next business day) or on receipt after dispatch by registered or certified mail, postage prepaid, or on the next business day if transmitted by national overnight courier, addressed in each case as follows:

(a)     If to the Debtors, at:
        Marc Kirshbaum
        Chief Executive Officer
        Sococo, Inc.
        Marc.Kirshbaum@sococo.com

        and

12

> Levene, Neale, Bender, Yoo & Brill L.L.P.
> 10250 Constellation Boulevard, Suite 1700
> Los Angeles, CA 90067
> Attention: Ron Bender, Esq.
> Phone: (310) 229-1234
> Email: rb@lnbyb.com

(b)     If to the Plan Sponsor, at:
        ESW Capital, LLC
        401 Congress Ave. Suite 2650
        Austin, TX  78701
        Attn:  Neeraj Gupta, Corporate Development
        Email:  neeraj@eswcapital.com

        and

        Goulston & Storrs, P.C.
        885 Third Avenue, 18th Floor
        New York, New York 10022
        Attention: Trevor R. Hoffmann, Esq.
        Email: thoffmann@goulstonstorrs.com

(c)     If to AVG, at:
        AVG Holdings, LP
        500 Ygnacio Valley Rd., Suite 360
        Walnut Creek, CA 94556
        Attn: Investment Reporting
        Email: investment.reporting@avgholdings.com

        and

        Winthrop Couchot Golubow Hollander, LLP
        1301 Dove Street, Suite 500
        Newport Beach, CA 92660
        Attention: Richard H. Golubow, Esq.
        Email: rgolubow@wcghlaw.com

## 24.     __Independent Due Diligence and Decision Making.__

Each Party confirms that its decision to execute this Agreement has been based upon its independent investigation of the operations, businesses, financial and other conditions and prospects of the Debtors. To the extent any materials or information have been furnished to it by another Party, each Party acknowledges that it has been provided for informational purposes only, without any representation or warranty.

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be duly executed by their respective authorized officers as of the day and year first above written.

**Debtors**

**Sococo, Inc.**

Name:                    Marc D. Kirshbaum

Title:                    CEO


**VisibleGains, Inc.**

Name:                    Marc D. Kirshbaum

Title:                    CEO


**Plan Sponsor**

**ESW Capital, LLC**

Name:

Title:


**AVG**

**AVG Ventures, LP**

Name:

Title:

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be duly executed by their respective authorized officers as of the day and year first above written.

**<u>Debtors</u>**

**Sococo, Inc.**

_____

Name: _____

Title: _____

**VisibleGains, Inc.**

_____

Name: _____

Title: _____

**<u>Plan Sponsor</u>**

**ESW Capital, LLC**

*Andrew S Price*
Andrew S Price (Jun 27, 2019)
_____

Name: Andrew S Price
_____

Title: CFO
_____

**<u>AVG</u>**

**AVG Ventures, LP**

_____

Name: _____

Title: _____

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be duly executed by their respective authorized officers as of the day and year first above written.

**<u>Debtors</u>**

**Sococo, Inc.**

_____

Name: _____

Title: _____


**VisibleGains, Inc.**

_____

Name: _____

Title: _____


**<u>Plan Sponsor</u>**

**ESW Capital, LLC**

_____

Name: _____

Title: _____


**<u>AVG</u>**

**AVG Ventures, LP**

_____

Name: Charlotte Dawson _____

Title: Manager, AVG Ventures GP, LLC, its General Partner

**Exhibit 1**

**Plan**

1  RON BENDER (SBN 143364)
   KRIKOR J. MESHEFEJIAN (SBN 255030)
2  LINDSEY L. SMITH (SBN 265401)
   LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
3  10250 Constellation Blvd., Suite 1700
   Los Angeles, California 90067
4  Telephone:  (310) 229-1234
   Facsimile:   (310) 229-1244
5  Email: rb@lnbyb.com; kjm@lnbyb.com; lls@lnbyb.com
6
7  Attorneys for Chapter 11 Debtors and Debtors in Possession

8              **UNITED STATES BANKRUPTCY COURT**
               **CENTRAL DISTRICT OF CALIFORNIA**
9                    **SANTA ANA DIVISION**

| | |
|---|---|
| 10  In re: | ) Lead Case No.: __:__-bk-_____-__ |
| | ) |
| 11  Sococo, Inc., | ) Chapter 11 Cases |
| | ) |
| 12          Debtor and Debtor in Possession. | ) Jointly administered with: |
| | ) Case No. __:__-bk-_____-__ |
| 13 _____ | ) |
| 14 | ) |
| 15  In re: | ) DEBTORS' JOINT PRE-PACKAGED |
| | ) PLAN OF REORGANIZATION |
| 16  VisibleGains, Inc., | ) (DATED JUNE 27, 2019) |
| | ) |
| 17          Debtor and Debtor in Possession. | ) |
| | ) |
| 18 _____ | ) _Plan Confirmation Hearing_: |
| 19  ☒ Affects Both Debtors | ) Date:  [To Be Scheduled] |
| | ) Time:  [To Be Scheduled] |
| 20  ☐ Affects Sococo, Inc. Only | ) Place:  Courtroom __ |
| | )          411 West Fourth Street |
| 21  ☐ Affects VisibleGains, Inc. Only | )          Santa Ana, California |
| 22 | ) |
| | ) |
| 23          Debtors and Debtors in Possession | ) |
| | ) |
| 24 | ) |
| | ) |
| 25 | ) |
| 26 _____ | ) |

27

28

# **TABLE OF CONTENTS**

I.      INTRODUCTION...................................................................................................2

II.     SUMMARY OF THIS PLAN ................................................................................4

III.    DEFINITIONS, RULES OF INTERPRETATION, AND
        CONSTRUCTION OF TERMS...........................................................................6

IV.     CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS............................7

        A.      Summary ....................................................................................................7

        B.      Identification Of Classes ............................................................................8

                1.      Unimpaired Classes ........................................................................8

                2.      Impaired Classes/Entitled to Vote .................................................8

                3.      Impaired Classes/Deemed to Reject...............................................8

                4.      Elimination of Classes for Voting Purposes ..................................9

                5.      Controversy Concerning Classification, Impairment or
                        Voting Rights ..................................................................................9

        C.      Treatment Of Unclassified Claims .............................................................9

                1.      Administrative Claims.....................................................................9

                2.      Allowed Priority Tax Claims .......................................................12

                3.      Ordinary Course Liabilities ..........................................................12

        D.      Classification And Treatment Of Classified Claims And Equity
                Interests ...................................................................................................13

                1.      Treatment of AVG Claim (Class 1) ..............................................13

                2.      Treatment of Priority Unsecured Non-Tax Claims (Class
                        2)....................................................................................................13

                3.      Treatment of General Unsecured Claims (Class 3)......................14

                4.      Treatment of Senior Preferred Equity Interest (Class 4).............14

                5.      Treatment of Allowed Other Equity Interests (Class 5).............14

        E.      Means For Implementation Of This Plan .................................................14

                1.      Continued Corporate Existence....................................................14

                2.      Management and Board of Directors and Discharge of the
                        Debtors ..........................................................................................15

|   | 3. | Arrangements with the Plan Agent ................................................ 16 |
|---|----|-------------------------------------------------------------------|
|   | 4. | The Closing ...................................................................... 16 |
|   | 5. | Preservation of Causes of Action ................................................ 18 |
|   | 6. | Payment of the IP Payment .................................................... 19 |
| F. |   | Provisions Governing Resolution Of Claims And Distributions Of Property Under This Plan ................................................ 20 |
|   | 1. | Right to Object to Claims .................................................... 20 |
|   | 2. | Deadline for Objecting to Claims ............................................ 21 |
|   | 3. | Deadline for Responding to Claim Objections ........................... 21 |
|   | 4. | Right to Request Estimation of Claims ..................................... 22 |
|   | 5. | Distribution Procedures Regarding Allowed Claims ................... 22 |
| G. |   | EXECUTORY CONTRACTS ................................................ 24 |
|   | 1. | Assumption of Executory Contracts and Unexpired Leases ......... 24 |
|   | 2. | Rejection of Executory Contracts and Unexpired Leases ............ 24 |
|   | 3. | Procedures Related to Assumption of Executory Contracts .......... 26 |
|   | 4. | Rejection Claim Bar Date ..................................................... 29 |
|   | 5. | Indemnification Obligations ................................................. 29 |
| H. |   | Effect Of Rejection By One Or More Classes ................................ 30 |
|   | 1. | Impaired Classes Entitled to Vote ........................................... 30 |
|   | 2. | Acceptance by Class ........................................................... 30 |
|   | 3. | Reservation of Cramdown Rights ........................................... 30 |
| V. |   | EFFECT OF CONFIRMATION ................................................ 31 |
| A. |   | Legally Binding Effect ....................................................... 31 |
| B. |   | Vesting of Property of the Debtors in the Reorganized Debtors ............ 31 |
| C. |   | Injunctions, Releases And Discharge ......................................... 31 |
|   | 1. | Discharge of the Debtors ..................................................... 31 |
|   | 2. | Discharge Injunction ......................................................... 33 |
|   | 3. | Exculpation and Limitation of Liability ................................... 33 |
|   | 4. | Releases by the Debtors ..................................................... 34 |

| | | | | |
|---|---|---|---|---|
| | | 5. | Releases by Third Parties ................................................ | 35 |
| | | 6. | Mutual Releases ............................................................. | 37 |
| | D. | | Retention Of Jurisdiction ....................................................... | 38 |
| | | 1. | Bankruptcy Court Jurisdiction ...................................... | 38 |
| | | 2. | Limitation on Jurisdiction ............................................ | 40 |
| | E. | | Miscellaneous Provisions ...................................................... | 41 |
| | | 1. | Conditions to Effectiveness .......................................... | 41 |
| | | 2. | Exemption from Transfer Taxes .................................... | 41 |
| | | 3. | Securities Exemption ..................................................... | 42 |
| | | 4. | Defects, Omissions and Amendments of this Plan .......... | 43 |
| | | 5. | Withdrawal of this Plan ................................................. | 44 |
| | | 6. | Due Authorization By Holders of Claims and Equity Interests ......................................................................... | 44 |
| | | 7. | Filing of Additional Documentation .............................. | 44 |
| | | 8. | Changes in Rates Subject to Regulatory Commission Approval ......................................................................... | 45 |
| | | 9. | Governing Law .............................................................. | 45 |
| | | 10. | Successors and Assigns ................................................. | 45 |
| | | 11. | Transfer of Claims and Equity Interests ........................ | 45 |
| | | 12. | Notices .......................................................................... | 45 |
| | | 13. | Implementation .............................................................. | 47 |
| | | 14. | No Admissions ............................................................... | 48 |
| | F. | | Disbursing Agent ..................................................................... | 48 |
| | G. | | Post-Confirmation Status Report ............................................. | 48 |
| | H. | | Post-Confirmation Conversion/Dismissal ................................ | 49 |
| | I. | | Payment of United States Trustee Fees ................................... | 49 |
| | J. | | Final Decrees .......................................................................... | 50 |

# I.    **INTRODUCTION**

Sococo, Inc. ("Sococo") and its wholly-owned subsidiary VisibleGains, Inc. ("VG" and together with Sococo, collectively, the "Debtors"), intend to commence their Chapter 11 Cases by filing voluntary petitions for relief under Chapter 11 of Title 11, United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code") on June 28, 2019 (the "Petition Date").  This document is the Debtors' Plan of Reorganization (Dated June 27, 2019) (as at any time amended, the "Plan") that is being proposed jointly by the Debtors.

Chapter 11 allows the debtor, and, under some circumstances, creditors and other parties in interest, to propose a plan of reorganization.  A plan may provide for the debtor to reorganize by continuing to operate, to liquidate by selling the assets of its estate, or a combination of both. The Debtors are the parties who are jointly proposing this Plan.

This Plan is a plan of reorganization which has been jointly proposed by the Debtors for the resolution of outstanding Claims against and Equity Interests in the Debtors.  Capitalized terms used in this Plan and not otherwise defined have the meanings ascribed to such terms in Exhibit A to this Plan.

Although proposed jointly for administrative purposes, this Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims against and Equity Interests in the Debtors pursuant to the Bankruptcy Code.  The Debtors seek to consummate the transaction contemplated herein on the Effective Date of this Plan.

Each Debtor is a proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code.  The classifications of Claims and Equity Interests set forth in Article IV of this Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable. This Plan does not contemplate substantive consolidation of the Debtors.

Reference is made to the Disclosure Statement, filed contemporaneously with this Plan, for a discussion of the Debtors' history, businesses, property and results of operations, and for a summary of this Plan and certain related matters, including distributions to be made under this Plan.

The Debtors believe that this Plan represents the best outcome possible for the Chapter 11 Cases.

THE INFORMATION CONTAINED IN THIS PLAN IS INCLUDED HEREIN FOR PURPOSES OF DESCRIBING TREATMENT UNDER THIS PLAN.  THE INFORMATION CONTAINED HEREIN MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DESCRIBE TREATMENT UNDER AND TERMS OF THIS PLAN.  NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS REGARDING THIS PLAN, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS PLAN.

ALL CREDITORS, SHAREHOLDERS AND PARTIES IN INTEREST ARE ADVISED AND ENCOURAGED TO READ THIS PLAN AND THE CORRESPONDING DISCLOSURE STATEMENT IN THEIR ENTIRETY.  PLAN SUMMARIES AND STATEMENTS MADE IN THIS PLAN ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THIS PLAN AND THE EXHIBITS ANNEXED TO THIS PLAN. THE STATEMENTS CONTAINED IN THIS PLAN ARE MADE ONLY AS OF THE DATE HEREOF AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN SHALL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF.  ANY ESTIMATES OF CLAIMS AND EQUITY INTERESTS SET FORTH IN THIS PLAN MAY VARY FROM THE AMOUNTS OF CLAIMS AND EQUITY INTERESTS ULTIMATELY ALLOWED BY THE COURT.

THE FINANCIAL DATA RELIED UPON IN FORMULATING THIS PLAN IS BASED ON THE DEBTORS' BOOKS AND RECORDS WHICH, UNLESS OTHERWISE INDICATED, ARE UNAUDITED.   THE INFORMATION AND STATEMENTS CONTAINED IN THIS PLAN, INCLUDING, WITHOUT LIMITATION, INFORMATION ABOUT THE DEBTORS, THEIR BUSINESS AND THE ESTATES AND ASSETS, HAVE BEEN PROVIDED SOLELY BY THE DEBTORS, AND SUCH INFORMATION HAS NOT BEEN INDEPENDENTLY VERIFIED OR AUDITED BY ANY OTHER PARTY.

## II.   SUMMARY OF THIS PLAN

An overview of this Plan is set forth in the Disclosure Statement.

This Plan is the result of extensive discussions between the Debtors, their largest creditor (AVG Ventures – "AVG") and ESW Capital, LLC ("ESW" and the "Plan Sponsor") and presents the best possible outcome for creditors.   Under this Plan, ESW has agreed to, among other things:

(1) make a contribution of new cash to the Debtors on the Effective Date in an amount computed as $1,000,000 *plus* the amount of the Debtors' outstanding Accounts Receivable existing on the Effective Date (projected to be approximately $124,124.82 per the Debtors' June 26, 2019 balance sheet) *less* all accounts payable (projected to be approximately $175,241 per the Debtors' June 26, 2019 balance sheet), and accrued liabilities existing on the Effective Date including but not limited to paid-time-off (PTO) obligations owed to Sococo's employees as of the Effective Date totaling approximately $175,241 and other contractual obligations owed to Sococo's employees in connection with their employment agreements with the Debtors totaling approximately $348,742 (per the Debtors' June 26, 2019 balance sheet), all of which ESW has agreed to assume on the Effective Date and to pay following the Effective Date in the ordinary course but in no event later than the second biweekly payroll date occurring after the Effective

Date or thirty (30) business days after the Effective Date, whichever is earlier (provided, however, that any Allowed Claims that constitute accounts payable or accrued liabilities shall be paid on or around the Effective Date as set forth below) (collectively, the "New Cash Contribution"); and

   (2)  make the IP Payment (as further described below).

   The Estates will also be retaining all of their own cash for the benefit of the Debtors' creditors.

   The New Cash Contribution plus the Debtors' funds existing on the Effective Date plus any IP Payments (collectively, the "Plan Funds") will be used to effectuate the terms of this Plan and to fund this Plan.

   AVG has voluntarily agreed to permit all other holders of Allowed Claims to be paid in cash in full from the Plan Funds prior to AVG receiving any recovery on its claim. As a result of AVG's voluntary agreement, all other holders of Allowed Claims will receive a full cash recovery on the Effective Date or, in the event of any disputed claims, as soon after the Effective Date as such claim holders obtain Allowed Claims.

   In consideration for the New Cash Contribution and, if any, IP Payments, and on account of and in exchange for its Senior Preferred Equity Interest, ESW shall receive 100% of the New Equity. No other Distributions will be made to any other holders of Equity Interests. On the Effective Date, all of the existing Equity Interests shall be deemed retired, cancelled and extinguished and of no further force or effect. Other than the New Equity (as described herein), holders of Equity Interests in the Debtors will not receive any distribution or retain any property on account of such Equity Interests.

   ESW is not an insider of the Debtors, and has not served as an officer or director of the Debtors before or during the pendency of the Chapter 11 Cases. It is clear from the Debtors'

pre-petition marketing efforts that there is no buyer or investor willing to purchase the Debtors'

assets or to acquire the Equity of the Reorganized Debtors for enough money for there to be any

distribution to the holders of Equity Interests.  It is also clear from the Debtors' pre-petition

marketing efforts that there is no buyer or investor willing to purchase the Debtors' assets or to

acquire the Equity of the Reorganized Debtors for more money than has been offered by ESW.

This Plan therefore represents the best possible outcome for creditors.  Given the extent

of their operating losses and inability to continue to fund them, if not for this Plan, the Debtors

would be forced to immediately shut down and liquidate, which would result in a far worse

result for creditors than this Plan.

## III.    DEFINITIONS, RULES OF INTERPRETATION, AND CONSTRUCTION OF TERMS

All capitalized terms not defined elsewhere in this Plan shall have the meanings assigned

to them in the Glossary of Defined Terms attached as Exhibit A to this Plan.  Any capitalized

term used in this Plan that is not defined herein has the meaning ascribed to that term in the

Bankruptcy Code and/or Bankruptcy Rules.

For purposes of this Plan, any reference in this Plan to an existing document or exhibit

filed or to be filed means that document or exhibit as it may have been or may be amended,

supplemented, or otherwise modified.

The words "herein," "hereof" and "hereunder" and other words of similar import refer to

this Plan as a whole and not to any particular section, subsection or clause contained in this

Plan, unless the context requires otherwise.  Whenever from the context it appears appropriate,

each term stated in either the singular or the plural includes the singular and the plural, and

pronouns stated in the masculine, feminine or neuter gender include the masculine, feminine and

the neuter.

Captions and headings to articles, sections and exhibits are inserted for convenience of reference only and are not intended to be part of or to affect the interpretation of this Plan.

The rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## IV.    CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

### A.    Summary

As required by the Bankruptcy Code, this Plan classifies Claims and Equity Interests in various Classes according to their right to priority.   This Plan states whether each Class of Claims or Equity Interests is impaired or unimpaired.   This Plan provides the treatment each Class will receive.

Pursuant to section 1122 of the Bankruptcy Code, a Claim or Equity Interest is placed in a particular Class for purposes of voting on this Plan and receiving Distributions under this Plan only to the extent (i) the Claim or Equity Interest qualifies within the description of that Class; (ii) the Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest in that Class, and is classified in another Class or Classes to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such other Class or Classes; and (iii) the Claim or Equity Interest has not been paid, released, or otherwise compromised before the Effective Date.   A Claim or Equity Interest which is not an Allowed Claim or Allowed Equity Interest, including a Disputed Claim, is not in any Class, and, notwithstanding anything to the contrary contained in this Plan, no Distribution shall be made on account of any Claim or Equity Interest which is not an Allowed Claim or Allowed Equity Interest.   In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Compensation Claims, and Priority Tax Claims are not classified under this Plan and are excluded from the following Classes.

## B.     Identification Of Classes

The following chart represents the classification of Claims and Interests for each of the

Debtors pursuant to this Plan:

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | AVG | Impaired | Entitled to Vote |
| 2 | Priority Unsecured Non-Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | All General Unsecured Claims Other than AVG | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 4 | Senior Preferred Equity Interest | Impaired | Entitled to Vote |
| 5 | All Other Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

### 1.     Unimpaired Classes

Classes 2 and 3 are unimpaired under this Plan.  Under section 1126(f) of the

Bankruptcy Code, holders of Allowed Claims in Classes 2 and 3 are being paid in full and are

therefore conclusively presumed to have accepted this Plan and are therefore not entitled to vote

to accept or reject this Plan.

### 2.     Impaired Classes/Entitled to Vote

Classes 1, 4 and 5 are impaired under this Plan.  The holders of the Allowed Claims in

Class 1 and the Allowed Senior Preferred Equity Interests in Class 4 are entitled to vote to

accept or reject this Plan.

### 3.     Impaired Classes/Deemed to Reject

Class 5 is impaired under this Plan, and all members of Class 5 are deemed to reject this

Plan because they will not be receiving or retaining any property under this Plan on account of

their Class 5 Equity Interests.  Therefore, holders of Other Equity Interests in Class 5 are not entitled to vote to accept or reject this Plan.

### 4.    Elimination of Classes for Voting Purposes

Any Class of Claims or Equity Interests that is not occupied as of the date of the commencement of the Confirmation Hearing by an Allowed Claim, an Allowed Equity Interest, or a Claim or Equity Interest temporarily allowed under Rule 3018 of the Bankruptcy Rules shall be deemed deleted from this Plan for purposes of voting on acceptance or rejection of this Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

### 5.    Controversy Concerning Classification, Impairment or Voting Rights

In the event a controversy or dispute should arise involving issues related to the classification, impairment or voting rights of any Creditor or Equity Interest Holder under this Plan, whether before or after the Confirmation Date, the Bankruptcy Court may, after notice and a hearing, determine such controversy.  Without limiting the foregoing, the Bankruptcy Court may estimate for voting purposes (i) the amount of any contingent or unliquidated Claim the fixing or liquidation of, as the case may be, would unduly delay the administration of the Chapter 11 Cases and (ii) any right to payment arising from an equitable remedy for breach of performance.

## C.    Treatment Of Unclassified Claims

### 1.    Administrative Claims

(a)    General: Administrative expenses are Claims for costs or expenses of administering the Chapter 11 Cases which are allowed under Bankruptcy Code Section 507(a)(2).  The Bankruptcy Code requires that all allowed administrative claims be paid on the Plan Effective Date unless a particular claimant agrees to a different treatment.  Except with regards to the Ordinary Course Liabilities (the treatment of which is described below), subject to the bar date provisions herein, unless otherwise agreed to by the parties, each holder of an

Allowed Administrative Claim shall be paid the full amount of the unpaid portion of such

Allowed Administrative Claim from the Plan Funds within ten (10) days after the later of (a) the

Effective Date, (b) the Allowance Date, or (c) such other date as is mutually agreed upon by the

Debtors, the Plan Sponsor and the holder of such Claim.

(b)     Payment of Statutory Fees:  All fees payable pursuant to 28 U.S.C. § 1930 shall

be paid in Cash equal to the amount of such Administrative Claim when due or no later than the

Effective Date.  Post-petition U.S. Trustee fees and post-confirmation reports shall be paid out

of the Plan Funds and filed as required by 28 U.S.C. § 1930 until the Chapter 11 Cases are

closed, converted or dismissed, and failure to do either timely is a material default pursuant to

section 1112 of the Bankruptcy Code.  After confirmation, the Plan Agent will file with the

Court and serve on the U.S. Trustee quarterly financial reports in a format prescribed by the

U.S. Trustee, and the Plan Agent will cause to be paid out of the Plan Funds all post-

confirmation quarterly fees to the U.S. Trustee until final decrees are entered or the Chapter 11

Cases are converted or dismissed as provided in 28 U.S.C. § 1930(a)(6).

(c)     Bar Date for Administrative Claims:

(i)     General Provisions:  Except as otherwise provided in this Article IV,

requests for payment of Administrative Claims must be included within an application (setting

forth the amount of, and basis for, such Administrative Claims, together with documentary

evidence) and Filed and served on respective counsel for the Debtors, the Plan Sponsor and

AVG no later than thirty (30) days after the Confirmation Hearing or by such earlier deadline

governing a particular Administrative Claim contained in an order of the Bankruptcy Court

entered before the Effective Date.  Holders of Administrative Claims (including, without

limitation, professionals requesting compensation or reimbursement of expenses and the holders

of any Claims for federal, state or local taxes) that are required to File a request for payment of

such Claims and that do not File such requests by the applicable bar date specified above shall

be forever barred from asserting such Administrative Claims against the Debtors or any of their

property, absent an order of the Court to the contrary.

(ii)    Professionals:  All professionals or other entities requesting compensation

or reimbursement of expenses, including Professional Compensation Claims, pursuant to

sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered

before the Effective Date (including, without limitation, any compensation or commission

requested by any professional or any other entity for making a substantial contribution in the

Chapter 11 Cases) shall File and serve on the Reorganized Debtors, the Plan Agent, the U.S.

Trustee, AVG and those parties on the Post-Confirmation Service List an application for final

allowance of their compensation and reimbursement of expenses no later than forty-five (45)

days after the Effective Date.  Objections to applications of professionals for compensation or

reimbursement of expenses must be filed and served on the Reorganized Debtors, the Plan

Agent, the U.S. Trustee and AVG.

Any professional fees and reimbursements or expenses incurred by the Reorganized

Debtors subsequent to the Effective Date may be paid by the Reorganized Debtors out of the

Reorganized Debtors' funds without application to the Bankruptcy Court or any further

Bankruptcy Court order.  The Plan Agent shall have the right to retain any professionals the

Plan Agent deems necessary and appropriate for the Plan Agent to perform his functions without

any further order of the Court.  The Plan Agent shall have the right to cause to be paid out of the

Plan Funds the fees and expenses of any professionals employed by the Plan Agent without any

further Bankruptcy Court order provided that any such professionals employed by the Plan

Agent file with the Bankruptcy Court a summary pleading that sets forth the fees and expenses

sought to be paid and serve such summary pleading on the Reorganized Debtors, the Plan

Agent, the U.S. Trustee, AVG and those parties on the Post-Confirmation Service List.  The foregoing parties shall have ten (10) days following the filing and service date of the summary pleading to file and serve an objection to the payment of any such fees and expenses.  If any such objection is timely filed and served, the Plan Agent may not pay any such fees and expenses until an order of the Bankruptcy Court is entered following notice and a hearing approving of the Plan Agent's payment of such fees and expenses out of the Plan Funds.  If no such objection is timely filed, the Plan Agent may pay such fees and expenses out of the Plan Funds without any further order of the Bankruptcy Court.[1]

### 2.    Allowed Priority Tax Claims

Each Holder of an Allowed Priority Tax Claim against the Debtors shall receive, from the Plan Funds, in full satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim (i) Cash equal to the amount of such Allowed Priority Tax Claim, or (ii) such other less favorable treatment to the Holders of an Allowed Priority Tax Claim as to which the Debtors, the Plan Sponsor, and the Holder of such Allowed Priority Tax Claim shall have agreed upon in writing.

### 3.    Ordinary Course Liabilities

(a)    All Ordinary Course Liabilities are deemed to be Allowed Claims to the extent set forth in the Approved Budget.  Except as set forth below, holders of Administrative Claims on account of Ordinary Course Liabilities are not required to file or serve any request for payment of the Ordinary Course Liability.  The Debtors shall continue to pay each Ordinary Course Liability accrued prior to the Effective Date, pursuant to the payment terms and

---

[1] As an accommodation to the Debtors, counsel for the Debtors has agreed to cap its pre-petition and post-petition fees and expenses for the Chapter 11 Cases through the Effective Date at $125,000.  This cap shall not apply to any fees and expenses that counsel for the Debtors incurs in its representation of the Plan Agent for post-Effective Date work if the Plan Agent decides to retain such counsel.  Any such post-Effective Date fees and expenses will be paid by the Plan Agent out of the Plan Funds.

conditions of the particular transaction giving rise to the Ordinary Course Liability, and the Approved Budget.  To the extent that a holder of an Administrative Claim, on account of Ordinary Course Liability which accrued prior to the Effective Date, did not submit an invoice for the Ordinary Course Liability to the Debtors prior to the Effective Date, the holder must submit the invoice to the Plan Agent in the ordinary course of business pursuant to the terms and conditions of the particular transaction giving rise to the Ordinary Course Liability. The Plan Agent shall remit payment on the Ordinary Course Liability within fifteen (15) days of receipt of the invoice.  The Plan Sponsor shall be responsible for the payment of all of its own fees and expenses and shall not be paid any money out of the Plan Funds.

**D.      Classification And Treatment Of Classified Claims And Equity Interests**

      **1.      Treatment of AVG Claim (Class 1)**

With the consent of AVG, the Debtors and the Plan Sponsor, the AVG Claim shall be deemed Allowed.  AVG shall receive the AVG Recovery on account of and in full and complete settlement, release and discharge of, and in exchange for, its Allowed AVG Claim; *provided that* its Distribution shall only occur after accounting for funding of the Distribution Reserve, in an amount required under this Plan; *provided further*, as Distributions are made and Claims are reconciled, AVG shall be entitled to payments from the excess funds remaining in the Distribution Reserve that were previously earmarked for such Claims.

      **2.      Treatment of Priority Unsecured Non-Tax Claims (Class 2)**

On or about the Effective Date, each holder of a Priority Unsecured Non-Tax Claim, to the extent Allowed, shall receive on account of and in full and complete settlement, release and discharge of, and in exchange for, its Allowed Priority Unsecured Non-Tax Claim, either Cash from the Plan Funds equal to the full unpaid amount of such Allowed Priority Unsecured Non-Tax Claim, or such other treatment as the Debtors, the Plan Sponsor and the holder of such Allowed Priority Unsecured Non-Tax Claim shall have agreed.

**3.    Treatment of General Unsecured Claims (Class 3)**

On or about the Effective Date, each holder of a General Unsecured Claim, to the extent Allowed, shall receive, on account of and in full and complete settlement, release and discharge of, and in exchange for its Allowed General Unsecured Claim, Cash equal to the full unpaid amount of such Allowed General Unsecured Claim from the Plan Funds.  In the event that Allowed General Unsecured Claims exceed General Unsecured Claims as reflected in the Debtors' Schedules of Assets and Liabilities, the Reorganized Debtors shall assume or otherwise pay all such Allowed General Unsecured Claims.

**4.    Treatment of Senior Preferred Equity Interest (Class 4)**

On the Effective Date, the holder of the Senior Preferred Equity Interest shall receive, on account of and in exchange for its Senior Preferred Equity Interest and in consideration for the New Cash Contribution, 100% of the New Equity, and its Senior Preferred Equity Interest shall be deemed automatically cancelled, released, and extinguished without further action by the Debtors or the Reorganized Debtors.

**5.    Treatment of Allowed Other Equity Interests (Class 5)**

No Distributions will be made to holders of Allowed Other Equity Interests.  On the Effective Date, all Allowed Other Equity Interests shall be deemed automatically cancelled, released, and extinguished without further action by the Debtors or the Reorganized Debtors, and the obligation of the Debtors and the Reorganized Debtors thereunder shall be discharged.

**E.    Means For Implementation Of This Plan**

**1.    Continued Corporate Existence**

Except as otherwise provided in this Plan, the Reorganized Debtors will continue to exist after the Effective Date as corporate entities, with all of the powers of a corporation under applicable law in the jurisdiction in which the Debtors are incorporated and pursuant to their

Charter Documents in effect before the Effective Date, as such documents are amended by or pursuant to this Plan.

Upon the Effective Date, and without any further action by the shareholders, directors, or officers of the Reorganized Debtors, the Reorganized Debtors' Charter Documents shall be deemed amended (a) to the extent necessary, to incorporate the provisions of this Plan, and (b) to prohibit the issuance by the Reorganized Debtors of nonvoting securities to the extent required under section 1123(a)(6) of the Bankruptcy Code, subject to further amendment of such Charter Documents as permitted by applicable law, and to the extent such documents are amended, such documents are deemed to be amended pursuant to this Plan and require no further action or approval other than any requisite filings required under applicable state, provincial or federal law.  The Charter Documents shall be filed with the Plan Supplement.

**2.      Management and Board of Directors and Discharge of the Debtors**

The Plan Sponsor may nominate and elect new members for the board(s) of directors of the Reorganized Debtors in accordance with the Reorganized Debtors' Charter Documents. The identity of such new members shall be disclosed in the Plan Supplement prior to the Plan Supplement Deadline.  Upon the Effective Date, the current members of the Debtors' board of directors shall no longer serve in such capacity and shall be discharged of all duties in connection therewith.  On the Effective Date, the Reorganized Debtors will retain and/or hire, and compensate, the Debtors' current employees, including the following officers: Marc D. Kirshbaum (the Debtors' Chief Executive Officer), Janice Smith (Sococo's Vice President of Administration & Communication), Chris Padilla (Sococo's Vice President of Marketing), and Snehal Karia (Sococo's Vice President of Engineering).  The employment agreements between the Reorganized Debtors and Sococo's employees provide and/or will provide for compensation in the form of a salary, as well as severance obligations due to the employees in the event of

termination pursuant to the Sococo, Inc. Severance Policies & Practices which the Reorganized Debtors will assume and adopt with respect to all of the Debtors' employees.

**3.    Arrangements with the Plan Agent**

By the Plan Supplement Deadline, the Debtors shall file with the Bankruptcy Court a disclosure identifying the Plan Agent.  At the Confirmation Hearing, the Bankruptcy Court shall ratify the appointment of the Plan Agent.  The Plan Agent shall fulfill this role without receiving any compensation from the Plan Funds.

**4.    The Closing**

The Closing of the transactions required and contemplated under this Plan shall take place on the Effective Date at the offices of Goulston & Storrs, P.C., 885 Third Avenue, 18th Floor, New York, New York 10022, or at such other place identified in a notice provided to those parties listed in Section V.E.12 of this Plan.  The Debtors may reschedule the Closing by making an announcement at the originally scheduled Closing of the new date for the Closing.  A notice of the rescheduled Closing shall be filed with the Bankruptcy Court and served on the parties identified in Section V.E.12 of this Plan within two (2) days after the originally scheduled Closing.  All documents to be executed and delivered by any party as provided in this Article IV and all actions to be taken by any party to implement this Plan as provided herein shall be in form and substance satisfactory to the Debtors and the Plan Sponsor.  The following actions shall occur at or before the Closing (unless otherwise specified), and shall be effective on the Effective Date:

(a)    Execution of Documents and Corporate Action.  The Debtors shall deliver all documents and perform all actions reasonably contemplated with respect to the implementation of this Plan.  The Debtors, or their designee, are authorized (i) to execute on behalf of the Debtors, in a representative capacity and not individually, any documents or instruments after the Confirmation Date or at the Closing that may be necessary to consummate this Plan and (ii)

to undertake any other action on behalf of the Debtors to consummate this Plan.  Each of the matters provided for under this Plan involving the corporate structure of the Debtors or corporate action to be taken by or required of the Debtors will, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized, approved, and (to the extent taken before the Effective Date) ratified in all respects without any requirement of further action by stockholders, creditors, or directors of the Debtors.  On the Effective Date, all matters provided for in this Plan involving the corporate structure of the Reorganized Debtors, and all corporate actions required by the Debtors, and the Reorganized Debtors in connection with this Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Reorganized Debtors.  For purposes of effectuating this Plan, none of the transactions contemplated in this Plan shall constitute a change of control under any agreement, contract, or document of the Debtors.

(b)    Cancellation of Equity Interests.  On the Effective Date, all existing Equity Interests of the Debtors shall be retired, cancelled, extinguished and/or discharged in accordance with the terms of this Plan.   Except as otherwise provided in this Plan or the Plan Supplement, on the Effective Date: (1) the obligations of the Debtors under any certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Equity Interest shall be deemed cancelled as to the Debtors and the Reorganized Debtors shall not have any continuing obligations thereunder, and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants or

other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors shall be released and discharged.

(c)     Issuance of New Equity.   On the Effective Date, 1,000 shares of New Equity shall be issued.   The New Equity shall be free and clear of all Liens, Claims, Interests, and encumbrances of any kind, except as otherwise provided in this Plan.   All the shares of the New Equity issued pursuant to this Plan shall be duly authorized, validly issued, fully paid, and non-assignable.   On the Effective Date, none of the New Equity will be listed on a national securities exchange. The Reorganized Debtors may take all necessary actions, if applicable, after the Effective Date to suspend any requirement to (i) be a reporting company under the Securities Exchange Act, and (ii) file reports with the Securities and Exchange Commission or any other entity or party.

(d)     Funding of the New Cash Contribution.   On the Effective Date, the Plan Sponsor shall contribute to the Debtors an amount of Cash equal to the New Cash Contribution in consideration of the Plan Sponsor's acquisition of the New Equity.   The New Cash Contribution is not subject to any financing contingency.   The New Cash Contribution shall be used to fund Distributions under this Plan.   The Plan Sponsor shall contribute the New Cash Contribution to the Debtors by wire transferring the New Cash Contribution into the Trust Account.

**5.     Preservation of Causes of Action**

Unless any Claims against a Person are expressly waived, relinquished, exculpated, released, compromised, transferred or settled in this Plan or by a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all of the Debtors' rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date, and the Reorganized Debtors' rights to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  Subject to the releases set forth in Article V of this Plan, no person or entity may rely on

the absence of a specific reference in this Plan, the Plan Supplement, or the Disclosure Statement to any specific claim or cause of action as any indication that the Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action. The Debtors or Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any person or entity, except as otherwise expressly provided in this Plan, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches, shall apply to any claim or cause of action upon, after, or as a consequence of the confirmation of this Plan or the occurrence of the Effective Date.

### 6.    Payment of the IP Payment

During the IP Payment Period, the Reorganized Debtors shall notify the Plan Agent and AVG of the assertion of claims filed by any of the Reorganized Debtors or any of their affiliates for infringement of the Acquired Patents within five (5) business days of such claim being filed. After such notification, the Reorganized Debtors shall provide to the Plan Agent reports relating to the IP Payment as provided herein. The initial report shall be provided to the Plan Agent within thirty business days following the 180th day from the notification. Subsequent reports shall be due every 180 days from the initial report and for the duration of the IP Payment Period.

The reports shall include information reasonably requested by the Plan Agent, which shall include, but not be limited to, information concerning the amount of the IP Payment, the form of the underlying income (e.g., royalties, damages, or other consideration), the person the claim was made against, and documents relating to the resolution of the claim. The IP Payment, if any, will be made within thirty (30) days of the receipt of Net IP Proceeds by any of the Reorganized Debtors or any of their affiliates, to the Plan Agent for the benefit of the Estates until payments on all allowed Claims have been made, other than the AVG Recovery, and shall then be made directly to AVG.

The Reorganized Debtors shall have sole control over all aspects associated with the assertion and defense of claims filed by any of the Reorganized Debtors or their affiliates for infringement of the Acquired Patents including litigation and administrative proceeding control, settlement, selection and oversight of legal counsel, strategy, and disbursement of information. Neither the Reorganized Debtors nor any of their affiliates are under any obligation to assert any claims for infringement of the Acquired Patents.

**F.    Provisions Governing Resolution Of Claims And Distributions Of Property Under This Plan**

**1.    Right to Object to Claims**

Notwithstanding anything to the contrary herein, and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, except insofar as a Claim is Allowed under this Plan on and after the Effective Date, the Plan Agent, as the representative of the Estates, shall have the authority, but not the obligation, to: (1) file, withdraw or litigate to judgment objections to and requests for estimation of Claims; (2) settle or compromise any Disputed Claim without any further notice to or action, order or approval by the Bankruptcy Court; and (3) administer and adjust the Claims register to reflect any such settlements or compromises without any further notice to or action, order or approval by the Bankruptcy Court; *provided, however*, that until such time as AVG has received the full amount of the Allowed AVG Claim, the Plan Agent shall consult with AVG in performing the duties set forth in this section and may not, without the written consent of AVG or order of the Bankruptcy Court, settle or resolve any Disputed Claim, or Claim not scheduled by the Debtors, for an amount more than $5,000 in excess of that shown by the Debtors on their schedules.  The Plan Agent shall succeed to any pending objections to Claims filed by the Debtors prior to the Effective Date, and shall have and retain any and all rights and defenses the Debtors had immediately prior to the Effective Date with respect to any Disputed Claim.  For the avoidance of doubt, the

Reorganized Debtors shall retain and shall be the sole beneficiary of and shall have the exclusive right to enforce any and all claims, rights and Causes of Action arising from or related to its (a) Intellectual Property and (b) accounts receivable and cash (including, without limitation, claims for turnover of cash of the Debtors being held in escrow or on deposit by third parties).    The Reorganized Debtors shall provide commercially reasonable assistance and cooperation to the Plan Agent in connection with the Plan Agent's prosecution of objections to Claims, including, without limitation, reasonable access to the books and records of the Debtors or the Reorganized Debtors (as the case may be) and other information reasonably requested by the Plan Agent to enable the Plan Agent to perform its obligations under this Plan. Notwithstanding the foregoing, nothing herein shall impose upon or require the Reorganized Debtors to preserve or maintain the Debtors' books and records for any purpose beyond twelve months following the Effective Date unless the Plan Agent notifies the Reorganized Debtors before that time that the Plan Agent has no further need to have access to such books and records.

### 2.    Deadline for Objecting to Claims

Objections to Claims must be filed with the Bankruptcy Court, and a copy of the objection must be served on the subject Creditor before the expiration of the Claim Objection Deadline (unless such period is further extended by subsequent orders of the Bankruptcy Court); otherwise such Claims shall be deemed Allowed in accordance with section 502 of the Bankruptcy Code.  The objection shall notify the Creditor of the deadline for responding to such objection.

### 3.    Deadline for Responding to Claim Objections

No later than seven (7) days prior to a hearing scheduled with respect to the Objection to a Claim, or such other date as is indicated on such objection or the accompanying notice thereof, the Creditor whose Claim was objected to must file a written response to the objection with the

Bankruptcy Court and serve a copy on the Plan Agent.  Failure to file a written response within the applicable deadline may cause the Bankruptcy Court to enter a default judgment against the non-responding Creditor or granting the relief requested in the claim objection.

**4.      Right to Request Estimation of Claims**

Pursuant to section 502(c) of the Bankruptcy Code, the Debtors, the Reorganized Debtors, and the Plan Agent may request the Bankruptcy Court to estimate or liquidate any Disputed Claim that is contingent or unliquidated or any Disputed Claim arising from a right to an equitable remedy or breach of performance.

**5.      Distribution Procedures Regarding Allowed Claims**

**(a)      In General**

The Plan Agent shall cause the Disbursing Agent to make all Distributions required to be made under this Plan.

**(b)      Distributions on Allowed Claims Only**

The Plan Agent shall cause Plan Funds to be distributed only to the holders of Allowed Claims.  Until and if a Disputed Claim becomes an Allowed Claim, the holder of that Disputed Claim shall not receive any Distribution from the Plan Funds. For the avoidance of doubt, no Distributions from Plan Funds shall be made to holders of Allowed Equity Interests.

**(c)      Place and Manner of Payments of Distributions**

Except as otherwise specified in this Plan, Distributions from Plan Funds shall be made by mailing such Distribution to the Creditor at the address listed in any proof of claim or interest filed by the Creditor or at such other address as such Creditor shall have specified for payment purposes in a written notice received by the Plan Agent at least twenty (20) days before a Distribution Date.  If a Creditor has not filed a proof of claim or sent the Plan Agent a written notice of payment address, then the Distribution(s) for such Creditor will be mailed to the address identified in the Schedules of Assets and Liabilities.  The Plan Agent shall cause to be

distributed any Plan Funds by wire, check, or such other method as the Plan Agent deems appropriate under the circumstances. Before receiving any Distributions, all Creditors, at the request of the Plan Agent, must provide written notification of their respective Federal Tax Identification Numbers or Social Security Numbers to the Plan Agent; otherwise, the Plan Agent may suspend Distributions to any Creditors who have not provided their Federal Tax Identification Numbers or Social Security Numbers.

       **(d)**       **Undeliverable Distributions**

If a Distribution made from Plan Funds to any Creditor is returned as undeliverable, the Plan Agent shall use reasonable efforts to determine the then current address for such Creditor. If the Plan Agent cannot determine, or is not notified of, a then current address for such Creditor or Interest Holder within six months after the Effective Date, the Distribution reserved for such Creditor shall be deemed an unclaimed Distribution, and Section IV.F.5(e) of this Plan shall be applicable thereto.

       **(e)**       **Unclaimed Distributions**

If the current address for a Creditor entitled to a Distribution from Plan Funds under this Plan has not been determined within six months after the Effective Date or such Creditor has otherwise not been located or submitted a valid Federal Tax Identification Number or Social Security Number to the Plan Agent, then such Creditor shall forfeit the Distribution on the Claim.

       **(f)**       **Withholding**

The Plan Agent may, but shall not be required to, at any time withhold from a Distribution from Plan Funds to any Person (except the Internal Revenue Service) amounts sufficient to pay any tax or other charge that has been or may be imposed on such Person with respect to the amount distributable or to be distributed under the income tax laws of the United

States or of any state or political subdivision or entity by reason of any Distribution provided for in this Plan, whenever such withholding is determined by the Plan Agent (in its sole discretion) to be required by any law, regulation, rule, ruling, directive, or other governmental requirement. The Plan Agent, in the exercise of its sole discretion and judgment, may enter into agreements with taxing or other authorities for the payment of such amounts that may be withheld in accordance with the provisions of this section.

    **(g)**    **Dissolution**

        (i)    The Plan Agent shall be discharged or dissolved, as the case may be, at such time as all of the Plan Funds have been distributed pursuant to this Plan.

        (ii)    If at any time the Plan Agent determines, in reliance upon such professionals as a Plan Agent may retain, that the expense of maintaining the Estates likely exceed the value of the remaining Plan Funds, the Plan Agent may (i) reserve any amount necessary to finally resolve the Estates; (ii) donate any balance to a charitable organization (A) described in section 501(c)(3) of the Internal Revenue Code, (B) exempt from United States federal income tax under section 501(a) of the Internal Revenue Code, (C) not a "private foundation," as defined in section 509(a) of the Internal Revenue Code, and (D) that is unrelated to the Debtors and any insider of the Plan Agent.

**G.**    **EXECUTORY CONTRACTS**

    **1.**    **Assumption of Executory Contracts and Unexpired Leases**

Subject to Section IV.G.3(b) hereof, all Executory Contracts identified on the Schedule of Assumed Contracts and Unexpired Leases, attached to this Plan as <u>Exhibit B</u>, shall be deemed assumed by the Reorganized Debtors. The Debtors may amend or supplement the Schedule of Assumed Contracts and Unexpired Leases at any time prior to the Effective Date. Entry of the Confirmation Order shall constitute approval of such assumptions under sections 365 and 1123 of the Bankruptcy Code.

    **2.**    **Rejection of Executory Contracts and Unexpired Leases**

All Executory Contracts and Unexpired Leases not identified on the Schedule of Assumed Contracts and Unexpired Leases (or assumed by the Debtors previously) shall be deemed rejected on the Effective Date. Entry of the Confirmation Order shall constitute approval of such rejections under sections 365 and 1123 of the Bankruptcy Code. Notwithstanding the rejection of an Executory Contract, the terms of any confidentiality agreement or covenant not to compete contained therein shall survive and remain in full force and effect for the term thereof.

For the avoidance of doubt, except as set forth on the Schedule of Assumed Contracts and Unexpired Leases, any and all employment, severance, bonus, incentive, commission, compensation or similar agreement or plan or employee handbook (or any agreement outside the ordinary course of business) with any employees, officers or directors shall be deemed rejected by the Debtors (and not assumed by the Reorganized Debtors) on the Effective Date. As set forth on the Schedule of Assumed Contracts and Unexpired Leases, on the Effective Date, the Reorganized Debtors are hiring and/or retaining the Debtors' existing employees, including the individuals named in Section IV.E.2, above, and shall assume such employees' employment contracts, including pre- and post-Effective Date severance obligations and the Sococo, Inc. Severance Policies & Practices.

To the extent the 401(k) Plan has not yet been formally rejected and/or terminated prior to the Confirmation Date, such 401(k) Plan is being rejected by the Debtors, and the Debtors shall take all steps necessary prior to the Confirmation Date to effectuate termination of the 401(k) Plan and to wind down the 401(k) Plan as soon as possible after the Effective Date. For the avoidance of doubt, neither ESW nor the Reorganized Debtors shall have successor liability for the 401(k) Plan.

All such rejection damage claims, to the extent Allowed, shall constitute Allowed General Unsecured Claims and, as set forth above, in the event that the Plan Funds are not sufficient to pay all Allowed General Unsecured Claims in full, the Reorganized Debtors shall assume and pay all such Allowed General Unsecured Claims.

On the Effective Date, any and all equity based incentive plans or stock ownership plans of the Debtors, including all agreements related thereto, entered into before the Effective Date, or other plans, agreements or documents giving rise to Equity Interests, including the contingent cash components of any such plans, agreements, or documents, shall be immediately terminated without any action of the Debtors, the Reorganized Debtors or the Plan Sponsor. To the extent such plans, agreements or documents are considered to be Executory Contracts, such plans, agreements or documents shall be deemed to be, and shall be treated as though they are, Executory Contracts that are rejected pursuant to section 365 of the Bankruptcy Code under this Plan. From and after the Effective Date, all warrants, stock options and other equity awards outstanding or issued at such time, whether included in a warrant, plan, contract, agreement or otherwise, will have no value, shall be cancelled and extinguished and thus will not entitle any holder thereof to purchase or otherwise acquire any equity interests in the Reorganized Debtors.

**3.      Procedures Related to Assumption of Executory Contracts**

**(a)      Establishment of Cure Claim Amounts**

The Cure Amounts associated with the assumption of the Executory Contracts pursuant to Section IV.G.3 hereof are specified in the Schedule of Assumed Contracts and Unexpired Leases.

Any Objection to (i) the applicable Cure Amount (a "Cure Objection") and (ii) an objection to the adequate assurance of future performance (a "Adequate Assurance Objection") to be provided by the Plan Sponsor on behalf of the Reorganized Debtors must be in writing,

filed with the Court, and served upon (a) the Debtors, (b) counsel to the Debtors, (c) counsel to the Plan Sponsor, and (d) the U.S. Trustee, by no later than July 15, 2019 or such other date fixed by the Court (the "Objection Deadline"). The objection must set forth the specific default alleged under the applicable Assumed Contract or Unexpired Lease and claim a specific monetary amount that differs from the applicable Cure Amount, if any, and/or further information required of the Reorganized Debtors with respect to adequate assurance of future performance.

If no Objection to the Cure Amount is received by the Objection Deadline to an Assumed Contract or Unexpired Lease, then the assumption of such Assumed Contract or Unexpired Lease shall be authorized pursuant to section 365 of the Bankruptcy Code and the applicable Cure Amount, if any, shall be binding upon the non-Debtor counterparty to such Assumed Contract or Unexpired Lease for all purposes and shall constitute a final determination of the cure amount required to be paid to such Assumed Contract or Unexpired Lease counterparty in connection with the assumption of such Assumed Contract or Unexpired Lease, and the non-Debtor counterparty to such Assumed Contract or Unexpired Lease shall be deemed to have waived its right to object to, contest, condition, or otherwise restrict the assumption of such Assumed Contract or Unexpired Lease (including, without limitation, from asserting any additional cure or other amounts with respect to the Assumed Contract or Unexpired Lease arising prior to such assumption). Furthermore, upon the assumption of such Assumed Contract or Unexpired Lease, the Reorganized Debtors shall enjoy all of the Debtors' rights and benefits thereunder without the necessity of obtaining any party's written consent to the Debtors' assumption of such rights and benefits.

**(b)     Objection to Disputed Cure Amounts**

The Plan Sponsor shall have the right to examine any Objection to Cure Amount filed by any party, and shall have the right to object to and contest the Disputed Cure Amount asserted therein.

If an objection to a Disputed Cure Amount has not been resolved by the Bankruptcy Court or agreement of the parties by the Effective Date, the Executory Contract related to such Disputed Cure Amount shall be deemed assumed by the Reorganized Debtors effective on the Effective Date; provided, however, the Reorganized Debtors may revoke an assumption of any such Executory Contract within ten (10) days after entry of an order by the Bankruptcy Court adjudicating the objection to the Disputed Cure Amount related to the Executory Contract by filing a notice of such revocation with the Bankruptcy Court and serving a copy on the party(ies) whose Executory Contract is rejected.  Any Executory Contract identified in a revocation notice shall be deemed rejected retroactively to the Confirmation Date.

**(c)     Payment of Cure Amounts**

Within ten (10) Business Days after the Effective Date, the Plan Agent shall cause to be paid all Cure Amounts related to all assumed Executory Contracts, other than Disputed Cure Amounts, out of the Plan Funds.

Subject to Section IV.G.3(b) hereof, the Plan Agent shall cause to be paid out of the Plan Funds all Cure Amounts that are subject to an objection on the later of (i) within ten (10) Business Days after the Effective Date or (ii) within ten (10) Business Days after entry of an order by the Bankruptcy Court resolving the objection or approving an agreement between the parties concerning the Cure Amount.

**(d)      No Admission of Liability**

Nothing contained in this Plan or the Plan Supplement shall constitute an admission by the Debtors, the Plan Sponsor or the Reorganized Debtors that any such contract or unexpired lease is in fact an Executory Contract or Unexpired Lease that the Debtors have any liability thereunder.

**(e)      Reservation of Rights**

Nothing in this Plan shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtors under any executory or non-executory contract or any unexpired or expired lease, nor shall any provision of this Plan increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors under any such contract or lease.

**4.      Rejection Claim Bar Date**

Each Claim resulting from the rejection of an Executory Contract, pursuant to Section IV.G.2 hereof, shall be filed with the Bankruptcy Court no later than the Rejection Claim Bar Date; provided, however, any party whose Executory Contract is rejected pursuant to a revocation notice, pursuant to Section IV.G.3(b) hereof, may file a rejection damage Claim arising out of such rejection within thirty (30) days after the filing of the revocation notice with the Bankruptcy Court.  Any Claim resulting from the rejection of an Executory Contract not filed by the applicable deadline shall be discharged and forever barred, and shall not be entitled to any Distributions under this Plan.  The Plan Agent shall have the right to object to any rejection damage Claim.

**5.      Indemnification Obligations**

Any obligation of the Debtors to indemnify, reimburse, or limit the liability of any Person, including any officer or director of the Debtors, or any agent, professional, financial

advisor, or underwriter of any securities issued by the Debtors, relating to any acts or omissions occurring before the Effective Date, whether arising pursuant to charter, bylaws, contract or applicable state law, shall be deemed to be, and (a) shall be treated as, a General Unsecured Claim and/or Executory Contract and shall be deemed to be rejected, canceled, and discharged pursuant to the Plan as of the Effective Date and (b) any and all Claims resulting from such obligations are disallowed under section 502(e) of the Bankruptcy Code or other applicable grounds, including section 502(d) or violations of sections 327, 362, 363 or other requirements of the Bankruptcy Code, or if any court of applicable jurisdiction rules to the contrary, such Claim shall be estimated pursuant to section 502(c) of the Bankruptcy Code in the amount of $0 or such other amount as the Bankruptcy Court shall determine.

**H.    Effect Of Rejection By One Or More Classes**

    **1.    Impaired Classes Entitled to Vote**

AVG (Class 1) and the Senior Preferred Equity Interest held by ESW (Class 4) are the sole impaired Classes entitled to vote to accept or reject the Plan, and both AVG and ESW have agreed to vote to accept the Plan.

    **2.    Acceptance by Class**

A Class of Claims or shall have accepted the Plan if the Plan is accepted by at least two thirds (2/3) in amount and more than one half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan.

    **3.    Reservation of Cramdown Rights**

In the event that any impaired Class shall fail to accept this Plan in accordance with section 1129(a) of the Bankruptcy Code, the Debtors reserve the right to request that the Bankruptcy Court confirm this Plan in accordance with the provisions of section 1129(b) of the Bankruptcy Code.

## V.    EFFECT OF CONFIRMATION

**A.    Legally Binding Effect**

The provisions of this Plan shall bind all Creditors and Interest Holders, whether or not they accept this Plan and wherever located.  On and after the Effective Date, all holders of Claims and Equity Interests shall be precluded and enjoined from asserting any Claim or Equity Interest against the Debtors or their assets or properties (and for the avoidance of doubt, against the Reorganized Debtors or their assets or properties) based on any transaction or other activity of any kind that occurred prior to the Confirmation Date except as permitted under this Plan.

**B.    Vesting of Property of the Debtors in the Reorganized Debtors**

On the Effective Date, except as otherwise expressly provided in this Plan or Confirmation Order, all Estate Property (excluding Sococo Inc.'s equity interest in Seminars2You GmbH, which equity interest shall be not be acquired by ESW, and shall be deemed abandoned under this Plan pursuant to sections 554 and 1123 of the Bankruptcy Code to the extent not otherwise abandoned by Sococo, Inc. prior to the Confirmation Date), other than the Plan Funds, shall vest in the Reorganized Debtors free and clear of all Liens, Claims, interests, and encumbrances of any kind, except as otherwise provided in this Plan.

On the Effective Date, except as otherwise provided in this Plan, the Reorganized Debtors may operate their businesses and may use, acquire, or dispose of property, without supervision of approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**C.    Injunctions, Releases And Discharge**

    **1.    Discharge of the Debtors**

**To the fullest extent provided under Bankruptcy Code section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by this Plan or the Confirmation Order, all distributions under this Plan will be**

in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims and Causes of Action, whether known or unknown, including any interest accrued on such Claims from and after the Petition Date, against, liabilities of, Liens on, obligations of, rights against, and Equity Interests in the Debtors or any of their assets or properties, and regardless of whether any property will have been distributed or retained pursuant to this Plan on account of such Claims or Equity Interests.  Except as otherwise expressly provided by this Plan or the Confirmation Order, upon the Effective Date, the Debtors and the Estates will be deemed discharged and released under and to the fullest extent provided under Bankruptcy Code section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims and Equity Interests of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i). The Confirmation Order shall be a judicial determination of the discharge of all Claims against and Equity Interests in the Debtors, subject to the occurrence of the Effective Date.

The issuance of New Equity or transfer of assets through this Plan shall not result in the Reorganized Debtors (a) having any liability or responsibility for any Claim against or Equity Interest in the Debtors, the Estates, or Insider of the Debtors, or (b) having any liability or responsibility to the Debtors, except as expressly set forth in this Plan. Without limiting the effect or scope of the foregoing, and to the fullest extent permitted by applicable laws, the issuance of the New Equity or transfer of assets contemplated in this Plan shall not subject the Reorganized Debtors, their respective properties or assets or respective affiliates, successors, or assigns to any liability for Claims against the Debtors'

32

interests in such assets by reason of such issuance of New Equity or transfer of assets under any applicable laws, including, without limitation, any successor liability.

2. **Discharge Injunction**

Except as otherwise expressly provided in this Plan, the discharge and releases set forth in Section V.C.1 hereof shall also operate as an injunction permanently prohibiting and enjoining the commencement or continuation of any action or the employment of process with respect to, or any act to collect, recover from, or offset (a) any Claim discharged and released in Section V.C.1 hereof, or (b) any cause of action, whether known or unknown, based on the same subject matter as any Claim discharged and released in Section V.C.1 hereof. Except as otherwise expressly provided in this Plan, all Persons shall be precluded and forever barred from asserting against the Debtors and the Reorganized Debtors, their successors or assigns, or their assets, properties, or interests in property any other or further Claims, or any other right to legal or equitable relief regardless of whether such right can be reduced to a right to payment, based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date.

3. **Exculpation and Limitation of Liability**

The Exculpated Parties will neither have nor incur any liability to any entity for any claims or Causes of Action arising on or after the Petition Date and prior to or on the Effective Date for any act taken or omitted to be taken in connection with, or related to formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the consummation of this Plan, the Disclosure Statement, or any other contract, instrument, release or other agreement or document created or entered

into in connection with this Plan or any other pre-petition or post-petition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or confirmation or consummation of this Plan; provided, however, that the foregoing provisions will have no effect on the liability of any entity that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted gross negligence or willful misconduct.

4.      **Releases by the Debtors**

**Notwithstanding anything to the contrary in this Plan or the Confirmation Order, effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy of which is hereby acknowledged and confirmed, the Debtors, the Estates, and the Reorganized Debtors will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full discharge, waiver and release to the Released Parties and their respective related parties (and each such Released Party and their respective related parties so released shall be deemed forever released and waived by the Debtors) and their respective properties from any and all released claims that the Debtors, the Estates, and the Reorganized Debtors and their respective related parties would have been legally entitled to assert in their own right, on behalf of one another, or on behalf of another party against the Released Parties or their respective related parties; provided, however, that the foregoing provisions of this release shall not operate to waive or release (i) the rights of the Debtors or the Reorganized Debtors to enforce this Plan and the contracts, instruments, releases and other agreements or documents delivered under or in connection with this Plan or assumed pursuant to this**

1    **Plan or assumed pursuant to final order of the Bankruptcy Court; and/or (ii) any claims**

2    **or defenses against third party.**

3         **The foregoing release shall be effective as of the Effective Date without further**

4    **notice to or order of the Bankruptcy Court, act or action under applicable law, regulation,**

5    **order, or rule or the vote, consent, authorization or approval of any person and the**

6    **Confirmation Order will permanently enjoin the commencement or prosecution by any**

7    **person or entity, whether directly, derivatively or otherwise, of any claims, obligations,**

8    **suits, judgments, damages, demands, debts, rights, Causes of Action, or liabilities released**

9

10   **pursuant to this release.**

11        **5.    Releases by Third Parties**

12        **To the extent allowed by applicable law, on, and as of, the Effective Date and for**

13   **good and valuable consideration, the receipt and sufficiency of which are acknowledged,**

14   **the Debtors, the Reorganized Debtors and the Released Parties shall be forever released**

15   **from any and all claims, obligations, actions, suits, rights, debts, accounts, Causes of**

16   **Action, remedies, avoidance actions, agreements, promises, damages, judgments, demands,**

17

18   **defenses, or claims in respect of equitable subordination, and liabilities throughout the**

19   **world under any law or court ruling through the Effective Date (including all claims based**

20   **on or arising out of facts or circumstances that existed as of or prior to the Effective Date,**

21   **including claims based on negligence or strict liability, and further including any**

22   **derivative claims asserted on behalf of the Debtors, whether known or unknown, foreseen**

23   **or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtors,**

24

25   **the Estates, or the Reorganized Debtors would have been legally entitled by applicable law**

26   **to assert in its own right, whether individually or collectively); provided however that with**

27   **respect to the Released Parties, the foregoing release is granted only by the Creditors who**

28

35

1  are Unimpaired; provided further, however, that with respect to the Released Parties, the

2  release provided in Section V.C.4 herein, shall not extend to any claims by any

3  Governmental Unit with respect to criminal liability under applicable law, willful

4  misconduct or bad faith under applicable law, or *ultra vires* acts under applicable law. No

5  compliance with or reliance on the applicable law or the orders of the Bankruptcy Court

6  shall be deemed or permitted to be judged, declared, or ruled to be in any way wrongful,

7  in bad faith, *ultra vires*, inequitable or otherwise subject to any sanction or punishment, all

8  of which are preempted, superseded and negated by this Plan to the maximum extent

9  permitted by applicable law.

10

11        For the avoidance of doubt, nothing contained herein shall prevent the enforcement

12  of the terms of this Plan.

13

14        With regard to all Released Parties, releases are appropriate for several reasons:

15  (1) all creditors except for AVG will be paid in full and AVG has voluntarily agreed to

16  accept the treatment of its Allowed Claim under this Plan; (2) each has made substantial

17  contributions in exchange for the releases provided for their benefit under this Plan; (3)

18  each Released Party shared an identity of interest in the common goal of confirmation of

19  this Plan; and (4) the Debtors believe that the releases provided in this Plan are of little or

20  no value to the Estates as the Debtors do not believe that any claims exist against any

21  Released Party at this time.

22        AVG is entitled to releases under this Plan.  AVG has made a substantial

23  contribution to this Plan by directly or indirectly (i) providing the necessary funding to the

24  Debtors before and during the Chapter 11 Cases, (ii) negotiating and executing the RSA,

25  and (iii) voluntarily agreeing to subordinate that portion of the Plan Funds to which it

26

27

28

would have otherwise been entitled as the holder of an Allowed Claim in order to enable all other Allowed Claims to be paid in full.

ESW is entitled to releases under this Plan.  As the Plan Sponsor, ESW has made substantial contributions to this Plan.  Without ESW, this Plan would not be possible.

Marc Kirshbaum is entitled to a release under this Plan.  Mr. Kirshbaum served on the Debtors' Board of Directors and is entitled to indemnification.  Therefore, any claims asserted against him would, in essence, be a claim against the Debtors, thus imposing additional costs upon the Estates and the Reorganized Debtors.

6.    Mutual Releases

Effective as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party hereby releases and is deemed released by each other Released Party, from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Released Parties, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Released Parties would have been legally entitled to assert in their own right, or on behalf of the Holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Chapter 11 Cases, including without limitation, avoidance actions under chapter 5 of the Bankruptcy Code, any Claim or Interest that is treated in this Plan, and any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to the Debtors or the Estates; provided however that the foregoing release shall not apply to (i) any obligation of any Released Parties arising under the RSA or this Plan, (ii) any claim arising from fraud

**(including without limitation fraud in the inducement) or willful misconduct in connection with the Released Parties' entry into the RSA or this Plan; and (iii) any right of indemnity that any Released Parties may have against another Released Party under applicable law.**

**D.     Retention Of Jurisdiction**

      **1.     Bankruptcy Court Jurisdiction**

      Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain and have such jurisdiction over the Chapter 11 Cases to the maximum extent as is legally permissible, including, without limitation, for the following purposes:

      (a)     To allow, disallow, determine, liquidate, classify or establish the priority or secured or unsecured status of or estimate any Right of Action, Claim or Equity Interest, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Equity Interests;

      (b)     To ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

      (c)     To determine any and all applications or motions pending before the Bankruptcy Court on the Effective Date of this Plan, including without limitation any motions for the rejection, assumption or assumption and assignment of any Executory Contract or Unexpired Lease;

      (d)     To consider and approve any modification of this Plan, remedy any defect or omission, or reconcile any inconsistency in this Plan, or any order of the Bankruptcy Court, including the Confirmation Order;

(e)     To determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of this Plan or any Plan Documents or any entity's obligations in connection with this Plan or any Plan Documents, or to defend any of the rights, benefits, Estate Property transferred, created, or otherwise provided or confirmed by this Plan or the Confirmation Order or to recover damages or other relief for violations thereof;

(f)     To consider and act on the compromise and settlement of any claim or cause of action by or against the Debtors, the Estates, the Reorganized Debtors or the Plan Agent;

(g)     To decide or resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters, or grant or deny any applications involving the Debtors or the Estates that may be pending on the Effective Date or that may be brought by the Debtors, the Reorganized Debtors, or the Plan Agent (as applicable), or any other related proceedings by the Reorganized Debtors, and to enter and enforce any default judgment on any of the foregoing;

(h)     To decide or resolve any and all applications filed by the Debtors for compensation;

(i)     To issue orders in aid of execution and implementation of this Plan or any Plan Documents to the extent authorized by section 1142 of the Bankruptcy Code or provided by the terms of this Plan;

(j)     To decide issues concerning the federal or state tax liability of the Debtors which may arise in connection with the confirmation or consummation of this Plan or any Plan Documents;

(k)     To interpret and enforce any orders entered by the Bankruptcy Court in the Chapter 11 Cases; and

(l)      To enter an order closing the Chapter 11 Cases when all matters contemplating

the use of such retained jurisdiction have been resolved and satisfied.

**2.      Limitation on Jurisdiction**

In no event shall the provisions of this Plan be deemed to confer in the Bankruptcy Court

jurisdiction greater than that established by the provisions of 28 U.S.C. §§ 157 and 1334, as well

as the applicable circumstances that continue jurisdiction for defense and enforcement of this

Plan and Plan Documents.   For the avoidance of doubt, however, such jurisdiction shall be

deemed, by the entry of the Confirmation Order, to:

(a)      Permit entry of a final judgment by the Bankruptcy Court in any core proceeding

referenced in 28 U.S.C. § 157(b) and to hear and resolve such proceedings in accordance with

28 U.S.C. § 157(c) and any and all related proceedings, including, without limitation, (i) all

proceedings concerning disputes with, or Causes of Action or Claims against, any Person that

the Debtors, the Estates, the Plan Agent or the Reorganized Debtors or any of their successors or

assigns, may have, and (ii) any and all Causes of Action or other Claims against any Person for

harm to or with respect to (x) any Estate Property, including any infringement of  Intellectual

Property or conversion of Estate Property, or (y) any Estate Property licensed or transferred by

the Debtors to any other Person;

(b)      Include jurisdiction over the recovery of any Estate Property (or property

transferred by the Debtors with Bankruptcy Court approval) from any Person wrongly asserting

ownership, possession or control of the same, whether pursuant to sections 542, 543, 549, 550 of

the Bankruptcy Code or otherwise, as well as to punish any violation of the automatic stay under

section 362 of the Bankruptcy Code or any other legal rights of the Debtors or the Estates under

or related to the Bankruptcy Code; and

(c)     Permit the taking of any default judgment against any Person who has submitted himself or herself to the jurisdiction of the Bankruptcy Court.

## E.     Miscellaneous Provisions

### 1.     Conditions to Effectiveness

The following are conditions precedent to the Effective Date that must be satisfied or waived in accordance with the terms of this Plan:  (a) the Plan Confirmation Order shall be in form and substance acceptable to the Plan Sponsor, in its reasonable discretion, and shall provide for the Plan Sponsor to acquire the New Equity, free and clear of all Liens, Claims, Equity Interests and encumbrances of any kind, except as otherwise provided in this Plan; (b) the final version of this Plan, Plan Supplement, and any other documents, or schedules thereto, shall have been filed in form and substance acceptable to the Plan Sponsor in its reasonable discretion; (c) this Plan and all documents, instruments and agreements to be executed in connection with this Plan shall have been executed and delivered by all parties to such documents, instruments and agreements; (d) the Debtors have not caused, or as to insiders, permitted to occur, an "ownership change" as such term is used in section 382 of title 26 of the United States Code; (e) there shall not be any stay in effect with respect to the Plan Confirmation Order; and (f) the Plan Confirmation Order shall not be subject to any appeal or rehearing.  The Debtors anticipate that the Effective Date will likely be the first Business Day following the date of entry of the Plan Confirmation Order and, if not, very shortly thereafter.

### 2.     Exemption from Transfer Taxes

This Plan and the Confirmation Order provide for (a) the issuance, transfer or exchange of notes, debt instruments and equity securities under or in connection with this Plan; (b) the creation, assignment, recordation or perfection of any lien, pledge, other security interest or other instruments of transfer; (c) the making or assignment of any lease; (d) the creation,

execution and delivery of any agreements or other documents creating or evidencing the formation of the Reorganized Debtors or the issuance or ownership of any interest in the Reorganized Debtors; or (e) the making or delivery of any deed or other instrument of transfer under this Plan in connection with the vesting of the Estates' assets in the Reorganized Debtors pursuant to or in connection with this Plan, including, without limitation, merger agreements, stock purchase agreement, agreements of consolidation, restructuring, disposition, liquidation or dissolution, and transfers of tangible property.  Pursuant to section 1146 of the Bankruptcy Code and this Plan, any such act described or contemplated herein will not be subject to any stamp tax, transfer tax, filing or recording tax, or other similar tax.

> **3.    Securities Exemption**

Any rights issued under, pursuant to or in effecting this Plan, including, without limitation, the New Equity, and the offering and issuance thereof by any party, including without limitation the Plan Sponsor or the Estates, shall be exempt from Section 5 of the Securities Act of 1933, if applicable, and from any state or federal securities laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, and shall otherwise enjoy all exemptions available for Distributions of securities under a plan of reorganization in accordance with all applicable law, including without limitation section 1145 of the Bankruptcy Code.  If the issuance of the New Equity does not qualify for an exemption under section 1145 of the Bankruptcy Code, the New Equity shall be issued in a manner, which qualifies for any other available exemption from registration, whether as a private placement under Rule 506 of the Securities Act, Section 4(2) of the Securities Act, and/or the safe harbor provisions promulgated thereunder.

### 4.    Defects, Omissions and Amendments of this Plan

The Debtors may, with the approval of the Bankruptcy Court and without notice to holders of Claims and Equity Interests, insofar as it does not materially and adversely affect holders of Claims and Equity Interests, correct any defect, omission, or inconsistency in this Plan in such a manner and to such extent necessary or desirable to expedite the execution of this Plan.  The Debtors may propose amendments or alterations to this Plan before the Confirmation Hearing as provided in section 1127 of the Bankruptcy Code if, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interests of holders of Claims and Equity Interests, so long as this Plan, as modified, complies with sections 1122 and 1123 of the Bankruptcy Code and the Debtors have complied with section 1125 of the Bankruptcy Code.  The Debtors may propose amendments or alterations to this Plan after the Confirmation Date but prior to substantial consummation, in a manner that, in the opinion of the Bankruptcy Court, does not materially and adversely affect holders of Claims and Equity Interests, so long as this Plan, as modified, complies with sections 1122 and 1123 of the Bankruptcy Code, the Debtors have complied with section 1125 of the Bankruptcy Code, and after notice and a hearing, the Bankruptcy Court confirms this Plan, as modified, under section 1129 of the Bankruptcy Code.

**5.      Withdrawal of this Plan**

The Debtors reserve the right to withdraw this Plan at any time prior to the Confirmation Date.  If the Debtors withdraw this Plan prior to the Confirmation Date, or if the Confirmation Date does not occur by July 19, 2019, unless otherwise extended by mutual agreement of the Debtors and the Plan Sponsor or the Effective Date does not occur by July 24, 2019, unless otherwise extended by mutual agreement of the Debtors and the Plan Sponsor, then this Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute an admission, waiver or release of any claims by or against the Debtors or any other person, or to prejudice in any manner the rights of the Debtors, the Estates, or any person in any further proceedings involving the Debtors.

**6.      Due Authorization By Holders of Claims and Equity Interests**

Each and every holder of a Claim or Equity Interest who elects to participate in the Distributions provided for herein warrants that such holder is authorized to accept in consideration of its Claim or Equity Interest against the Debtors the Distributions provided for in this Plan, and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by such holder under this Plan.

**7.      Filing of Additional Documentation**

By the Plan Supplement Deadline, the Debtors may file with the Bankruptcy Court such Plan Supplement, agreements and other documents as may be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan or any Plan Document, which shall also constitute "Plan Documents."

**8.    Changes in Rates Subject to Regulatory Commission Approval**

The Debtors are not subject to any regulatory commission regulations regarding the rates it charges.

**9.    Governing Law**

Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with the laws of the State of California, without giving effect to the principles of conflicts of law thereof.

**10.    Successors and Assigns**

The rights, benefits and obligations of any entity named or referred to in this Plan or any Plan Document shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

**11.    Transfer of Claims and Equity Interests**

Any transfer of a Claim shall be in accordance with Bankruptcy Rule 3001(e) and the terms of this Section V.E.11.  Notice of any such transfer shall be forwarded to the Debtors by registered or certified mail, as set forth in Section V.E.12 hereof.  Both the transferee and transferor shall execute any notice, and the signatures of the parties shall be acknowledged before a notary public.  The notice must clearly describe the interest in the Claim to be transferred.  No transfer of a partial interest shall be allowed.  All transfers must be of one hundred percent (100%) of the transferor's interest in the Claim.

**12.    Notices**

Any notice required to be given under this Plan or any Plan Document shall be in writing.  Any notice that is allowed or required hereunder except for a notice of change of address shall be considered complete on the earlier of (a) three (3) days following the date the

notice is sent by United States mail, postage prepaid, or by overnight courier service, or in the case of mailing to a non-United States address, air mail, postage prepaid, or personally delivered; (b) the date the notice is actually received by the Persons on the Post-Confirmation Service List by facsimile or computer transmission; or (c) three (3) days following the date the notice is sent to those Persons on the Post-Confirmation Service List as it is adopted by the Bankruptcy Court at the hearing on confirmation of this Plan, as such list may be amended from time-to-time by written notice from the Persons on the Post-Confirmation Service List.

(a)   If to the Debtors, at:
      Marc Kirshbaum
      Chief Executive Officer
      Sococo, Inc.
      marc.kirshbaum@sococo.com

      and

      Levene, Neale, Bender, Yoo & Brill L.L.P.
      10250 Constellation Boulevard, Suite 1700
      Los Angeles, CA 90067
      Attention: Ron Bender, Esq.
      Phone: (310) 229-1234
      Email: rb@lnbyb.com

(b)   If to the Plan Sponsor, at:
      ESW Capital, LLC
      401 Congress Ave. Suite 2650
      Austin, TX  78701
      Attn:  Andrew S. Price, CFO
      Email:  andy.price@trilogy.com

      and

      Goulston & Storrs, P.C.
      885 Third Avenue, 18th Floor
      New York, New York 10022
      Attention: Trevor R. Hoffmann, Esq.
      Email: thoffmann@goulstonstorrs.com

(c)    If to the U.S. Trustee, at:
[    ]
Attn: [    ]
Email:  [    ] @usdoj.gov

(d)    If to the Reorganized Debtors, at:
Sococo, Inc.
c/o ESW Capital, LLC
401 Congress Ave. Suite 2650
Austin, TX  78701
Attn:  Neeraj Gupta, Corporate Development
Email:  neeraj@eswcapital.com

and

Goulston & Storrs, P.C.
885 Third Avenue, 18th Floor
New York, New York 10022
Attention: Trevor R. Hoffmann, Esq.
Email: thoffmann@goulstonstorrs.com

and

(e)    If to AVG, at:
AVG Holdings, LP
500 Ygnacio Valley Rd., Suite 360
Walnut Creek, CA 94556
Attention: Investment Reporting
Email: investment.reporting@avgholdings.com

and

Winthrop Couchot Golubow Hollander, LLP
1301 Dove Street, Suite 500
Newport Beach, CA 92660
Attention: Richard H. Golubow, Esq.
Phone: (949) 720-4100
Email: rgolubow@wcghlaw.com

(f)    If to any Creditor or Interest Holder in his capacity as such, at his address or
facsimile number as listed on the Post-Confirmation Service List.

**13.    Implementation**

The Debtors, the Reorganized Debtors, the Plan Sponsor, and the Plan Agent shall be

authorized to perform all reasonable, necessary and authorized acts to consummate the terms

and conditions of this Plan and the Plan Documents, without further order from the Bankruptcy Court.

### 14.    No Admissions

Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Debtors with respect to any matter set forth herein, including, without limitation, liability on any Claim or Equity Interest or the propriety of the classification of any Claim or Equity Interest.

### F.    Disbursing Agent

As an accommodation to the Debtors and the Estates and at the request of the Debtors, the Debtors' bankruptcy counsel, Levene, Neale, Bender, Yoo & Brill L.L.P. ("LNBYB"), shall serve as the Disbursing Agent for the purpose of making all distributions required to be made by this Plan and will do so without being paid any disbursing agent fee.  LNBYB regularly serves this function for its clients.  LNBYB will establish a segregated trust account (the "Trust Account") for the purpose of maintaining the Plan Funds and out of which LNBYB, in its capacity, shall make the distributions required by this Plan.  LNBYB shall only make such distributions that are authorized by this Plan and, where appropriate, order of the Court and at the direction of the Plan Agent.  Unless LNBYB otherwise and subsequently agreed to in writing by LNBYB, LNBYB shall not serve as Plan Agent with respect to the payments required to be made under this Plan by the Plan Sponsor, including, but not limited to, the accounts payable and accrued liabilities which will be assumed and paid by the Plan Sponsor.

### G.    Post-Confirmation Status Report

Within one hundred twenty (120) days following the date of entry of the Plan Confirmation Order, unless final decrees closing the Chapter 11 Cases are first entered, the Plan Agent will file or cause to be filed with the Bankruptcy Court a status report explaining what

progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the UST and those parties who have requested special notice.  Further status reports shall be filed within thirty (30) days following the end of each calendar quarter and be served on the same entities until final decrees are entered closing the Chapter 11 Cases, unless otherwise ordered by the Bankruptcy Court.

**H.      Post-Confirmation Conversion/Dismissal**

A creditor or any other party in interest may bring a motion to convert or dismiss the Chapter 11 Cases under Section 1112(b) of the Bankruptcy Code after this Plan is confirmed if there is a default in performing this Plan.  If the Bankruptcy Court orders the Chapter 11 Cases converted to chapter 7 after this Plan is confirmed, then all property that had been property of the Estates, and that has not been disbursed pursuant to this Plan, will revest in the chapter 7 estates, and the automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Bankruptcy Court during these cases.  The Plan Confirmation Order may also be revoked under very limited circumstances. The Bankruptcy Court may revoke the Plan Confirmation Order if it was procured by fraud and if a party in interest brings an adversary proceeding to revoke confirmation within one hundred eighty (180) days after the date of entry of the Plan Confirmation Order.

**I.      Payment of United States Trustee Fees**

The Debtors will pay pre-confirmation fees owed to the U.S. Trustee on or before the Effective Date of this Plan.  After the Effective Date, the Plan Agent will file with the Court and serve on the U.S. Trustee quarterly financial reports in a format prescribed by the U.S. Trustee, and the Plan Agent will cause all such post-Effective Date quarterly fees to the U.S. Trustee to be paid out of the Plan Funds until final decrees are entered or the Chapter 11 Cases are converted or dismissed as provided in 28 U.S.C. § 1930(a)(6).

**J.      Final Decrees**

Once this Plan has been substantially consummated as referred to in 11 U.S.C. § 1101(2), the Plan Agent shall cause to be filed a motion with the Bankruptcy Court to obtain final decrees to close the Chapter 11 Cases.

Dated:  June 27, 2019

SOCOCO, INC. and VISIBLEGAINS, INC.

_____
Name:  Marc Kirshbaum
Title:  Chief Executive Officer


Dated:  June 27, 2019                               LEVENE, NEALE, BENDER, YOO
                                                    & BRILL L.L.P.

                                                    By: _/s/ Ron Bender_____
                                                          Ron Bender
                                                          Krikor J. Meshefejian
                                                          Lindsey L. Smith
                                                          Attorneys for Chapter 11 Debtors and
                                                          Debtors in Possession and Plan Proponents

## EXHIBIT A

### Glossary of Defined Terms

"401(k) Plan" means the Sococo, Inc. 401(k) Savings and Investment Plan.

"Acquired Patents" means the patents acquired by the Reorganized Debtors under this Plan and any patent applications acquired by the Reorganized Debtors under this Plan that subsequently grant as patents.

"Administrative Claim" means any cost or expense of administration of the Chapter 11 Cases incurred on or before the Effective Date entitled to priority under section 507(a)(1) and allowed under section 503(b) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Estates, including wages, salaries or commissions for services rendered after the commencement of the Chapter 11 Cases, certain taxes, fines and penalties, any actual and necessary post-petition expenses of operating the business of the Debtors, certain post-petition indebtedness or obligations incurred by or assessed against the Debtors in connection with the conduct of their business, or for the acquisition or lease of property, or for providing of services to the Debtors, including all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against the Estates under Chapter 123, Title 28, United States Code.

"Administrative Claim Bar Date" means the first Business Day that is ten (10) days after the Confirmation Hearing.

"Administrative Claimant" means any Person entitled to payment of an Administrative Claim.

"Administrative Tax Claim" means an Administrative Claim of a Governmental Unit.

"<u>Allowance Date</u>" means the date that a Claim or Equity Interest becomes an Allowed Claim or Allowed Equity Interest.

"<u>Allowed</u>" means, (1) with respect to any Claim, a Claim allowable under 11 U.S.C. § 502 (a) for which a proof of claim was filed on or before, as applicable, the General Bar Date, the Governmental Unit Bar Date, the Administrative Claim Bar Date or the Rejection Claim Bar Date, and as to which no objection or other challenge to the allowance thereof has been timely Filed, or if an objection or challenge has been timely Filed, such Claim is allowed by a Final Order; or (b) for which a proof of claim is not filed and that has been listed in the Schedules of Assets and Liabilities and is not listed as disputed, contingent, or unliquidated; or (c) that is deemed allowed by the terms of this Plan; or (2) with respect to any Equity Interest, such Equity Interest is reflected as outstanding in the stock transfer ledger or similar register or record of the Debtors on the Petition Date. For purposes of determining the amount of an Allowed Claim (other than a Claim specifically Allowed under this Plan), there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold against the Creditor under 11 U.S.C. § 553. Notwithstanding anything to the contrary in this Plan, the Debtors may, in their discretion, treat a Claim as an Allowed Claim to the extent it is allowed by an Order that is not a Final Order.

"<u>Approved Budget</u>" means the Budget agreed to by the Debtors and AVG and submitted to the Court.

"<u>AVG</u>" means AVG Ventures LP.

"<u>AVG Recovery</u>" means the amount of the Plan Funds remaining after payment in full of Allowed Other Secured Claims, Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Unsecured Non-Tax Claims, and Allowed General Unsecured Claims.

"<u>Ballot</u>" means the ballots which the Debtors transmitted to the AVG and the Senior Preferred Equity Holder.

"<u>Bankruptcy Code</u>" means the Bankruptcy Reform Act of 1978, as amended, Title 11, United States Code, as applicable to this Chapter 11 Case.

"<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Central District of California, Santa Ana Division, together with the District Court as to matters as to which the reference is withdrawn under 11 U.S.C. § 157(d).

"<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure.

"<u>Business Day</u>" means any day other than a Saturday, Sunday, or a "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

"<u>Cash</u>" means Cash, wire transfer, certified check, cash equivalents and other readily marketable securities or instruments, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issues by banks, and commercial paper of any Person, including interest accrued or earned thereon.

"<u>Causes of Action</u>" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as

1    fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the

2    Bankruptcy Code.

3        "Chapter 11 Cases" means *In re Sococo, Inc.*, Case No. [    ], and *In re VisibleGains, Inc.*,

4    Case No. [    ], jointly administered in the United States Bankruptcy Court for the Central

5    District of California, Santa Ana Division, under Chapter 11 of the Bankruptcy Code.

6

7        "Charter Documents" means the articles of certificate of incorporation and the bylaws

8    of the Debtors or Reorganized Debtors, as applicable, and any amendments to the foregoing.

9        "Claim" has the meaning assigned to such term by section 101(5) of the Bankruptcy

10    Code.

11        "Claim Objection Deadline" means the first Business Day that is ninety (90) days after

12    the Effective Date, as may be extended by order of the Bankruptcy Court.

13

14        "Class" means one of the classes of Claims or Equity Interests defined in Article III of

15    this Plan.

16        "Clerk" means the Clerk of the Bankruptcy Court.

17        "Closing" means the closing of the transactions contemplated under Article VI of this

18    Plan.

19        "Confirmation Date" means the date upon which the Clerk of the Bankruptcy Court

20    enters the Confirmation Order on the docket of the Bankruptcy Court.

21

22        "Confirmation Hearing" means the hearing held by the Bankruptcy Court pursuant to

23    section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may

24    be adjourned or continued from time to time.

25        "Confirmation Order" means the Order of the Bankruptcy Court approving and

26    confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

27

28

"<u>Creditor</u>" means any person that holds a Claim against a Debtor that arose on or before the Effective Date, or a Claim against the Debtor of any kind specified in sections 502(f), 502(g), 502(h) or 502(i) of the Bankruptcy Code.

"<u>Cure Amount</u>" means the amount of Cash required to cure defaults necessary to assume an Executory Contract under 11 U.S.C. § 365(b) as determined by the Bankruptcy Court or pursuant to any agreement among the Reorganized Debtors and the other party(ies) to the Executory Contract and as listed in the Schedule of Assumed Contracts and Unexpired Leases.

"<u>Cure Amount Objection Bar Date</u>" means July [ ], 2019, at 4:00 p.m. (PT).

"<u>Debtors</u>" means Sococo, Inc. and VisibleGains, Inc., each a Delaware corporation and a debtor in the Chapter 11 Cases.

"<u>Disallowed Claim</u>" means a Claim, or any portion thereof, that (a) has been disallowed by either a Final Order or pursuant to a settlement, or (b)(i) is listed in the Schedules of Assets and Liabilities at zero or as contingent, disputed or unliquidated, including by amendment hereby of such Schedules of Assets and Liabilities, and (ii) as to which a bar date has been established but no proof of claim has been filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code, any Final Order, or applicable law, or which is not deemed allowed by the terms of this Plan.

"<u>Disclosure Statement</u>" means the Disclosure Statement for this Plan, filed by the Debtors with the Bankruptcy Court, as may be amended or supplemented.

"<u>Disputed Claim</u>" means a Claim as to which a proof of claim or interest has been Filed or deemed Filed under applicable law, as to which an objection has been and which objection, if timely Filed, has not been withdrawn on or before any date fixed for Filing such objections by this Plan or Order of the Bankruptcy Court and has not been overruled or denied by a Final Order. Prior to the time that an objection has been or may be timely Filed, for the purposes of

this Plan, a Claim shall be considered a Disputed Claim to the extent that: (i) the Claim has been scheduled in the Schedules of Assets and Liabilities as contingent, disputed or unliquidated or in the amount of $0.

"Disputed Cure Amount" means, with respect to an Executory Contract for which a Proof of Cure Claim is filed, the amount that the counterparty to such Executory Contract asserts is necessary to assume such Executory Contract under 11 U.S.C. § 365(b).

"Distribution" means, except as otherwise provided in this Plan, the property required by this Plan to be distributed to the holders of Allowed Claims.

"Distribution Date" means any date that a Distribution is made under this Plan.

"Distribution Reserve" means a reserve established to hold, in the Trust Account, Cash equal to the aggregate of (a) Cash that would have been distributed on the Distribution Date on account of Disputed or undetermined (i) Administrative Claims had they been Allowed Claims, provided that with respect to Administrative Claims for which applications for compensation of professionals or other persons retained or to be compensated pursuant to sections 327, 328, 330, 331 and 503(b) of the Bankruptcy Code are or will be pending but are then undetermined, the amount of Cash deposited shall be the amount sought by such persons or the maximum amount such persons indicate that they intend to apply for, in each case less any monies already received by such professional or person, but in no event more than the amount to be paid to such professional or person pursuant to the Budget, (ii) Priority Unsecured Non-Tax Claims, (iii) Other Secured Claims, and (iv) General Unsecured Claims, plus (b) accrued interest on all Cash in the Distribution Reserve, plus (c) Cash in the amount of all taxes previously incurred by the Debtors (and not paid or otherwise provided for under this Plan); plus (d) Cash in the amount of all estimated costs and expenses of effectuating the actions and duties of the Plan Agent, including under Articles IV and V of this Plan.

"District Court" means the United States District Court for the Central District of California.

"Effective Date" means the first Business Day following the Confirmation Date on which (a) all conditions to the effectiveness of this Plan have been satisfied or waived as provided in this Plan, and (b) the Reorganized Debtors have Filed a notice of the Effective Date.

"Equity Interest" means, collectively, the Senior Preferred Equity Interest and the Other Equity Interests of Sococo.

"Estates" means the estates created upon the filing of the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code, together with all rights, claims and interests appertaining thereto.

"Estate Property" means all right, title, and interest in and to any and all property of every kind or nature owned by a Debtor or its Estate on the Effective Date as defined by 11 U.S.C. § 541.

"Exculpated Parties" (each one, an "Exculpated Party") means the Debtors and the directors, officers, agents, attorneys, accountants, consultants, equity holders, financial advisors, investment bankers, professionals, experts, and employees of the Debtors, in their respective capacities as such.  Any affiliate or other party related to any Exculpated Party shall also be a Exculpated Party to the extent that such affiliate or related party is alleged or charged to be directly or indirectly liable on any derivative, vicarious liability, alter ego or other theory for imposing liability on an affiliate or related party for the conduct or liability of the Exculpated Party.

"Executory Contracts" means executory contracts and unexpired leases as such terms are used in 11 U.S.C. § 365, including all operating leases, capital leases, and contracts to which a Debtor is a party or beneficiary on the Confirmation Date.

"<u>File or Filed</u>" means a request for relief encompassed within a pleading or other document is Filed when and on such date as such pleading or other document is entered on the docket of the Bankruptcy Court in this Chapter 11 Case.  A proof of claim is Filed when and on such date as such proof of claim is entered on the claims register in this Chapter 11 Case.

"<u>Final Order</u>" means an order or judgment which has not been reversed, stayed, modified, or amended and as to which the time for appeal has expired and no stay has been obtained.

"<u>General Bar Date</u>" means the deadline for filing proofs of claim established by the Bankruptcy Court as July [ ], 2019 at 4:00 p.m. prevailing Pacific time.

"<u>General Unsecured Claim</u>" means an unsecured Claim other than an Administrative Claim, a Priority Unsecured Non-Tax Claim, or a Priority Tax Claim.

"<u>Governmental Unit</u>" means United States; State; Commonwealth; District; Territory; municipality; department, agency, or instrumentality of the United States (but not a U.S. trustee while serving as a trustee in a case under title 11 of the United States Code), a State, a Commonwealth, a District, a Territory, or a municipality; or other domestic government.

"<u>General Unsecured Recovery</u>" means Cash from the New Cash Contribution, after payment in full of Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Unsecured Non-Tax Claims, and Other Secured Claims, in the expected amount of one-hundred percent (100%) of Allowed General Unsecured Claims which will be available for distribution to holders of the Allowed General Unsecured Claims on account of their Allowed General Unsecured Claims.

"<u>IP Payment</u>" means a payment to the Estates and after all Allowed Claims other than the Allowed AVG Claim have been paid in full a payment to AVG, equal to five percent (5%) of Net IP Proceeds in which the Reorganized Debtors or any of their affiliates have an interest

and collect or receive, if any, and whether directly or indirectly, from the assertion of claims filed by either of the Reorganized Debtors and/or any of their affiliates for infringement of the Acquired Patents during the IP Payment Period.

"IP Payment Period" means the period commencing on the Effective Date and ending on the fifth (5th) anniversary of the Effective Date.

"Insider" has the meaning set forth in section 101(31) of the Bankruptcy Code.

"Interest Holder" means any record or beneficial holder or owner of an Equity Interest.

"Intellectual Property" means intellectual property, including, without limitation, the following: (i)  all patents and patent applications, domestic or foreign, all licenses relating to any of the foregoing and all income and royalties with respect to any licenses, all rights to sue for past, present or future infringement thereof, all rights arising therefrom and pertaining thereto and all reissues, divisions, continuations, renewals, extensions and continuations-in-part thereof; (ii) all copyrights and applications for copyright, domestic or foreign, together with the underlying works of authorship (including titles), whether or not the underlying works of authorship have been published and whether said copyrights are statutory or arise under the common law, and all other rights and works of authorship, all computer programs, computer databases, computer program flow diagrams, source codes, object codes and all tangible property embodying or incorporating any copyrights, all licenses relating to any of the foregoing and all income and royalties with respect to any licenses, and all other rights, claims and demands in any way relating to any such copyrights or works, including royalties and rights to sue for past, present or future infringement, and all rights of renewal and extension of copyright; (iii) all state (including common law), federal and foreign trademarks, service marks and trade names, and applications for registration of such trademarks, service marks and trade names, all licenses relating to any of the foregoing and all income and royalties with respect to any

licenses, whether registered or unregistered and wherever registered, all rights to sue for past, present or future infringement or unconsented use thereof, all rights arising therefrom and pertaining thereto and all reissues, extensions and renewals thereof; (iv) all trade secrets, trade dress, trade styles, logos, other source of business identifiers, mask-works, mask-work registrations, mask-work applications, software, confidential and proprietary information, customer lists, license rights, advertising materials, operating manuals, methods, processes, know-how, algorithms, formulae, databases, quality control procedures, product, service and technical specifications, operating, production and quality control manuals, sales literature, drawings, specifications, blue prints, descriptions, inventions, name plates, catalogs, internet websites, and internet domain names and associated URL addresses; (v) the entire goodwill of or associated with the businesses now or hereafter conducted by the Debtors connected with and symbolized by any of the aforementioned properties and assets; and (vi) all accounts, payment intangibles, commercial tort claims and other rights to payment, all other proprietary rights or other intellectual or other similar property, and all other general intangibles associated with or arising out of any of the aforementioned properties and assets and not otherwise described above, and all proceeds of any IP.

"Lien" means a charge against or interest in property to secure payment of a debt or performance of an obligation which has not been avoided or invalidated under any provision of the Bankruptcy Code or other applicable law.

"Net IP Proceeds" shall mean the gross amount in which the Reorganized Debtors or any of their affiliates have an interest, that are collected or received by the Reorganized Debtors and/or any of their affiliates, whether directly or indirectly, from third parties against whom the claims for patent infringement are asserted during the IP Payment Period that is attributable to infringement damages, license fees, or other payments which relate to the Acquired Patents less

actual third party costs associated with the assertion and defense of the Acquired Patents incurred by the Reorganized Debtors and/or any of their affiliates , including associated pre-trial activities, trial proceedings, administrative proceedings (such as reexamination, post-grant review, *inter parties* review, and opposition proceedings), and appeals thereof.  The associated costs include (1) court costs, (2) governmental entity fees, and (3) third party costs such as legal counsel, consultant, and expert costs.

"New Cash Contribution" shall have the definition set forth in Article II hereof.

"New Equity" means the all of the equity interest in Reorganized Sococo, issued on the Effective Date, to the Plan Sponsor, free and clear of all Liens, Claims and encumbrances of any kind, except as provided in this Plan.

"Objection to Cure Amount" means the document filed in the Bankruptcy Court by a counterparty to an Executory Contract required in the event that such counterparty disputes the Cure Amount identified in the Schedule of Assumed Contracts and Unexpired Leases.

"Ordinary Course Creditor(s)" means a Creditor with an Ordinary Course Liability.

"Ordinary Course Liability" means an Administrative Claim (other than a Professional Compensation Claim or an Administrative Tax Claim), including Plan Sponsor professional fees and expenses, based on liabilities incurred in the ordinary course of the Debtors' business operations solely to the extent provided for in the Approved Budget.

"Other Equity Interest" means any interest in Sococo represented by ownership of common or preferred stock, including, to the extent provided by applicable law, any purchase right, warrant, stock option or other equity or debt security (convertible or otherwise) evidencing or creating any right or obligation to acquire or issue any of the foregoing; provided that the term Other Equity Interest shall not include the Senior Preferred Equity Interest.

"Person" means an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated association or organization, a governmental unit or any agency or subdivision thereof or any other entity.

"Petition Date" means June [ ], 2019, the date on which the Debtors filed their voluntary petitions commencing the Chapter 11 Cases.

"Plan" means this Joint Pre-Packaged Plan of Reorganization of the Debtors, as it may be amended or modified.

"Plan Agent" means the Person appointed as the representative of the Estates with such rights, duties, and obligations as set forth in this Plan.

"Plan Documents" means, collectively, those material documents executed or to be executed in order to consummate the transactions contemplated under this Plan, which will be filed with the Bankruptcy Court, including the Distribution Trust Agreement and any other documents that make up the Plan Supplement.

"Plan Funds" means all of the Plan Funds held in the Trust Account, including Cash deposited or held in the Distribution Reserve on account of disputed or undetermined Claims to the extent that those Claims are disallowed in whole or in part after the Effective Date, less the Distribution Reserve.

"Plan Sponsor" means ESW or an affiliate.

"Plan Supplement" means, collectively, any such documents as are referenced as such in this Plan to be Filed hereafter to supplement or clarify aspects of this Plan.

"Plan Supplement Deadline" means July [ ], 2019.

"Post-Confirmation Service List" means the list of those parties who have notified the Reorganized Debtors in writing, at or following the Confirmation Hearing, of their desire to

receive electronic notice of all pleadings filed by the Reorganized Debtors and have provided the e-mail address to which such notices shall be sent.

"Priority Unsecured Non-Tax Claim" means any Claim (other than an Administrative Claim or Priority Tax Claim) to the extent entitled to priority in payment under section 507(a) of the Bankruptcy Code.

"Priority Tax Claim" means any Claim held by a Governmental Unit entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

"Professional" means a professional employed in the Chapter 11 Case pursuant to Final Order under sections 327, 328, 363, or 1103 of the Bankruptcy Code; provided that for the purposes of any bar dates, duties or other requirements imposed by this Plan (as distinguished from benefits or rights provided by or pursuant to this Plan), any professional not so employed in the Chapter 11 Cases, but asserting any right or claim like a Professional on account of any service for or engagement by any foreign representative or foreign proceeding, shall have to comply with such same bar dates, duties and requirements as a Professional as one condition precedent to seeking any standing in the Chapter 11 Cases, any Allowance of any Claim or any other right under this Plan like a Professional, with the Reorganized Debtors and other parties in interest reserving all other challenges and defenses thereto.

"Professional Compensation Claim" means a Claim for compensation or reimbursement of expenses of a Professional retained in the Chapter 11 Cases, and requested in accordance with the provisions of 11 U.S.C. §§ 326, 327, 328, 330, 331, 503(b) and 1103; provided that for the purposes of any Claim asserted by any professional not so employed in the Chapter 11 Cases, but asserting any Claim like a Professional on account of any service for or engagement by any foreign representative or foreign proceeding, the holder of such Claim shall have to comply with the same bar dates, duties and requirements as the holder of a Professional Compensation Claim

as one condition precedent to seeking any standing or treatment as such, with the Reorganized Debtors and other parties in interest reserving all other challenges and defenses thereto.

"Rejection Claim Bar Date" means either (as applicable) (i) in respect to Executory Contracts rejected pursuant to a revocation notice filed pursuant to Section IV.G.3(b) of this Plan, the date that is thirty (30) days after the filing of such revocation notice, or (ii) as to all other Executory Contracts, the date that is thirty (30) days after the Effective Date.

"Released Parties" (each one, a "Released Party") means (a) the Debtors; (b) the Reorganized Debtors; (c) ESW; (d) AVG; and (e) directors, officers, agents, attorneys, accountants, consultants, equity holders, financial advisors, investment bankers, professionals, experts, and employees of any of the foregoing, in their respective capacities as such. Any affiliate or other party related to any Released Party shall also be a Released Party to the extent that such affiliate or related party is alleged or charged to be directly or indirectly liable on any derivative, vicarious liability, alter ego or other theory for imposing liability on an affiliate or related party for the conduct or liability of the Released Party.

"**Reorganized Debtors**" means the Debtors as they exist after the Effective Date.

"RSA" means the Restructuring Support Agreement attached to the Disclosure Statement as Exhibit "1".

"Schedule of Assumed Contracts and Unexpired Leases" means the schedule identifying proposed Cure Amounts for Executory Contracts and Unexpired Leases to be assumed by the Reorganized Debtors under this Plan. The Schedule of Assumed Contracts and Unexpired Leases is attached as Exhibit B to this Plan.

"Schedules of Assets and Liabilities" means the Debtors' Schedules of Assets and Liabilities, as may be amended or supplemented, and filed with the Bankruptcy Court in

accordance with section 521(a)(1) of the Bankruptcy Code, including as amended by this Plan or any Plan Supplement.

"Senior Preferred Equity Interest" means the Preferred Series C stock in Sococo owned by ESW that has which has priority over all other Equity Interests.

"Senior Preferred Equity Holder" means ESW.

"Treasury Regulations" means the regulations promulgated under the Internal Revenue Code by the Department of the Treasury of the United States.

"U.S. Trustee" means the Office of the United States Trustee for Region 16.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B

## Schedule of Assumed Contracts and Unexpired Leases

**[To be provided by Plan Sponsor]**

| Contracting Party | Applicable Debtor | Description of Contract or Lease/Services Provided | Cure Amount | Address1 | Address1 | City | State | Zip |
|---|---|---|---|---|---|---|---|---|
| **Vendor Agreements/Leases** | | | | | | | | |
| A STORAGE PLACE | Sococo | Lease of Storage Space | $0.00 | 2829 Pierce Parkway | | Springfield | OR | 97477 |
| Amazon web services | Sococo/VG | Cloud/IT services | $2,672.00 | 410 Terry Ave N | | Seattle | WA | 98109 |
| Andersen Tax LLC | Sococo | Tax Services | $0.00 | 400 South Hope Street | Suite 1000 | Los Angeles | CA | 90071 |
| Andrea Hanson | Sococo | Business Consulting Services | $0.00 | 4707 Gonzoles St. | | Austin | TX | 78702 |
| Ariba, Inc. | Sococo | Vendor Payment/Management for certain customers | $0.00 | 910 Hermosa Court | | Sunnyvale | CA | 94089 |
| ATLASSIAN | Sococo | Engineering product management and source control | $0.00 | 350 Bush St. | Floor 13 | San Francisco | CA | 94104 |
| Better Business Bureau | Sococo | Part of Privacy Shield | $0.00 | PO Box 140015 | | Boise | ID | 83714 |
| CHARGEBEE.COM | Sococo | Subscription Billing Solution | $0.00 | 340 S Lemon Ave | | Walnut | CA | 91789 |
| Chenoa Information Services | Sococo | Outsource Development services | $13,600.00 | 10 Parsonage Rd # 312 | | Edison | NJ | 8837 |
| Citizens Building LLC | Sococo | Lease of Real Property | $0.00 | 975 Oak Street | Suite 1010 | Eugene | OR | 97401 |
| CLEARBIT.COM | Sococo | Information aggregation salesforce extention | $0.00 | 90 Sheridan St | | San Francisco | CA | 94103 |
| CNA INSURANCE | Sococo | Business Insurance | $0.00 | 3 Waters Park Drive | #100 | San Mateo | CA | 94403 |
| CONSERO GLOBAL SOLUTIONS LLC | Sococo | Accouting and Finance | $1,260.00 | 1717 West 6th Street | Suite 410 | Austin | TX | 78703 |
| Convince & Convert | Sococo | Marketing Consulting | $0.00 | 885 S. College Mall Road | #376 | Bloomington | IN | 47401 |
| DNSMADEEASY | Sococo | DNS Services | $0.00 | 11490 Commerce Park Dr | | Reston | VA | 20191 |
| Ed Garcia | Sococo | Attorney At Law - IP | $50,000.00 | 221 Main St | Ste 1246 | Los Altos | CA | 94023 |
| EMBED.LY | Sococo | Marketing Services | $0.00 | 799 Market St. | 5th Floor | San Francisco | CA | 94103 |
| EsNet Riverwood Properties L.C. | Sococo | Potential Leasehold Interest in real property located in Provo, Utah | $0.00 | 5255 North Edgewood Drive | Suite 200 | Provo | UT | 84604 |
| EXPENSIFY | Sococo | Expense Reporting | $0.00 | 548 Market Street. Suite 61434 | | San Francisco | CA | 94104 |
| Extra Space Storage | Sococo | Self Storage | $0.00 | 195 Bear Hill Rd. | | Waltham | MA | 2451 |
| FACEBK | Sococo | Advertising - Digital | $0.00 | 1 Hacker Way | | Menlo Park | CA | 94025 |
| GoDaddy | Sococo | Domain Services | $0.00 | 14455 N Hayden Rd | Ste 226 | Scottsdale | AZ | 85260-6993 |
| GOOGLE | Sococo | Advertising - Digital | $0.00 | 1600 Amphitheatre Parkway | | Mountain View | CA | 94043 |
| GROW, Inc. | Sococo | Data visualization solution | $0.00 | 4100 N. Chapel Ridge Rd. #300 | | Lehi | UT | 84043 |
| Harman Connected Services Inc | Sococo | Outsource Development services | $21,938.71 | C4 block, Wing A, MS Ramaiah North City | Manayata Tech Park, Nagavara | Bengaluru, Karnataka 560045 | India | |
| HELLO | Sococo | Electronic Signature Solution | $0.00 | 944 Market St #400 | | San Francisco | CA | 94102 |
| HOTJAR SWIEQI | Sococo | Marketing Analytics | $0.00 | Level 2, St Julians Business Ce | Elia Zammit Street | St Julians STJ 3155 | Malta | |
| Hubspot | Sococo | Marketing Automation | $0.00 | 1 Harbour Pl | Suite 175 | Portsmouth | NH | 3801 |
| IP SERVICES | Sococo | IP Legal Services | $0.00 | 121 Moore St. | | Princeton | NJ | 8540 |
| J2 *EVOICE | Sococo | VOIP Services | $0.00 | 6922 Hollywood Blvd. | 5th Floor | Los Angeles | CA | 90028 |
| LEADIRO | Sococo | Marketing List Creation | $0.00 | 1 Fore St Ave, Barbican | London EC2Y 9DT, UK | | | |
| Leeann Brumby | Sococo | Consulting Agreement and related Severance Agreement | $0.00 | Apple Loft | The Old Rectory Bygrave SG7 5EG | | | |
| LINKEDIN | Sococo | Advertising - Digital | $0.00 | 1000 W. Maude Avenue | | Sunnyvale | CA | 94085 |
| LINODE | Sococo | Hosting Services | $0.00 | 249 Arch St. | | Philadelphia | PA | 19106 |
| LOGGLY | Sococo | Log Aggregation | $0.00 | 535 Mission St | Ste 2100 | San Francisco | CA | 94105 |
| MAILCHIMP | Sococo | Marketing - Email | $0.00 | 675 Ponce de Leon Ave NE | Suite 5000 | Atlanta | GA | 30308 |
| MIXPANEL | Sococo | Data Analytics | $0.00 | 405 Howard Street | 2nd Floor | San Francisco | CA | 94105 |
| MSFT | Sococo | Office Software | $0.00 | One Microsoft Way | | Redmond | WA | 98052-6399 |
| Network Solutions | Sococo | Domain Services | $0.00 | 12808 Gran Bay Parkway | | Jacksonville | FL | 32258 |
| NEW RELIC | Sococo | Server Monitoring | $0.00 | 188 Spear Street | Suite 1200 | San Francisco | CA | 94105 |
| OBJECTROCK | Sococo | Hosted Database Soltuions | $0.00 | 100 Congress Ave | Suite 400 | Austin | TX | 78701 |
| Okta, Inc. | Sococo | Federation Services | $0.00 | 100 First Street | | San Francisco | CA | 94105 |
| ONEHUB | Sococo | Virtual Data Room | $0.00 | 1109 1st Ave #406 | | Seattle | WA | 98101 |
| Punch Digital Strategies, Inc. | Sococo | Website Hostin | $2,500.00 | 2700 S. Quincy Street | Suite 220 | Arlington | VA | 22206 |
| QA InfoTech Pvt. Ltd. | Sococo | Outsource QA resources | $2,790.00 | A-8, Block A, Sector 68 | Noida, Uttar Pradesh 201309 | India | | |
| Rackspace US, Inc. | Sococo | Cloud Hositng | $31,333.18 | 1 Fanatical Pl | City of Windcrest | San Antonio | TX | 78218 |
| Recurly | VG | Subscription Billing Solution | $451.00 | 400 Alabama St. | Suite 202 | San Francisco | CA | 94110 |
| SALESFORCE | Sococo | Sales Data/project management | $0.00 | 415 Mission Street | 3rd Floor | San Francisco | CA | 94105 |
| Sendgrid | VG | Transactional Email Solution | $80.00 | 1801 California Street | | Denver | CO | 80202 |
| SENTRY | Sococo | Error monitoring | $0.00 | 32 Hawthorne Street | | San Francisco | CA | 94107 |
| SLACK | Sococo | Communication solution | $0.00 | 500 Howard St | | San Francisco | CA | 94105 |
| SNAPENGAGE | Sococo | Enterprise Live Chat | $0.00 | 1722 14th St | Suite 220 | Boulder | CO | 80302 |
| STATUS.IO | Sococo | Hosted Status Solution | $0.00 | | | Jackson | NJ | |
| SUNNYVALE SELF STORAGE | Sococo | Self Storage | $0.00 | 360 E Evelyn Ave | | Sunnyvale | CA | 94086 |
| SURVEYMONKEY | Sococo | Customer Survey Solution | $0.00 | 3050 S Delaware St | | San Mateo | CA | 94403 |
| SYMANTEC | Sococo | Endpoint security management | $0.00 | 350 Ellis Street | | Mountain View | CA | 94043 |

| | | | Cure Amount/PTO | | | | | |
|---|---|---|---|---|---|---|---|---|
| TSG Global, Inc. | Sococo | PSTN Services | $0.00 | 10 Cedar Brook Cir | | Holbrook | MA | 2343 |
| UNBOUNCE | Sococo | Hosted Landing pages | $0.00 | 400-401 West Georgia St. | Vancouver, BC,  V6B 5A1 | Canada | | |
| UserIQ | Sococo | Data Analytics | $0.00 | 1720 Peachtree St | NW #1000 | Atlanta | GA | 30309 |
| Valleymedia Inc | Sococo | Media Services | $0.00 | 200 SE 6th St | | Fort Lauderdale | FL | 33301 |
| Vidyo Inc | Sococo | Hosted Media Platform | $122,845.00 | 433 Hackensack Ave | | Hackensack | NJ | 7601 |
| wepay.com | Sococo | Payment processing | $0.00 | 350 Convention Way #200 | | Redwood City | CA | |
| ZAPIER.COM | Sococo | Integration Solution | $0.00 | 548 Market St. #62411 | | San Francisco | CA | 94104-5401 |
| Zencoder | Sococo | Encoding solution | $0.00 | 149 9th Street | Suite 300 | San Francisco | CA | 94103 |
| ZENDESK | Sococo | Hosted Support ticketing and chat | $0.00 | 1019 Market St | | San Francisco | CA | 94103 |

| **Employee Agreements** | | | Cure Amount/PTO | Additional Severance Terms with ESW |
|---|---|---|---|---|
| Marc Kirshbaum | Sococo | Employment Agreement and obligations related thereto; and Post-Closing Employment Compensation Policy | $21,633.79 | Confidential |
| Janice Smith | Sococo | Employment Agreement and obligations related thereto; and Post-Closing Employment Compensation Policy | $15,624.40 | Confidential |
| Chris Padilla | Sococo | Employment Agreement and obligations related thereto; and Post-Closing Employment Compensation Policy | $16,268.61 | Confidential |
| Snehal Karia | Sococo | Employment Agreement and obligations related thereto; and Post-Closing Employment Compensation Policy | $18,989.66 | Confidential |
| Patrick Dexter | Sococo | Employment Agreement and obligations related thereto; and Post-Closing Employment Compensation Policy | $10,562.09 | Confidential |
| William Blodgett | Sococo | Employment Agreement and obligations related thereto; and Post-Closing Employment Compensation Policy | $15,864.77 | Confidential |
| Chrisanne Bradley | Sococo | Consulting Agreement and obligations related thereto; and Post-Closing Employment Compensation Policy | $4,633.96 | Confidential |
| Leeann Brumby | Sococo | Employment Agreement and obligations related thereto; and Post-Closing Employment Compensation Policy | $0.00 | N/A |
| Michael Guidero | Sococo | Employment Agreement and obligations related thereto; and Post-Closing Employment Compensation Policy | $13,617.28 | Confidential |
| Nathan Scovil | Sococo | Employment Agreement and obligations related thereto; and Post-Closing Employment Compensation Policy | $8,749.66 | Confidential |
| Aigulia Shamyrkanova | Sococo | Employment Agreement and obligations related thereto; and Post-Closing Employment Compensation Policy | $2,422.99 | Confidential |
| Henry Wong | Sococo | Employment Agreement and obligations related thereto; and Post-Closing Employment Compensation Policy | $15,335.96 | Confidential |
| Alicia Andrews | Sococo | Employment Agreement and obligations related thereto; and Post-Closing Employment Compensation Policy | $2,819.89 | Confidential |
| Angela Stuart | Sococo | Employment Agreement and obligations related thereto; and Post-Closing Employment Compensation Policy | $674.97 | Confidential |
| Claire Nielsen | Sococo | Employment Agreement and obligations related thereto; and Post-Closing Employment Compensation Policy | $1,658.59 | Confidential |
| Garrett O'Brien | Sococo | Employment Agreement and obligations related thereto; and Post-Closing Employment Compensation Policy | $3,211.41 | Confidential |
| Rachel Sweet | Sococo | Employment Agreement and obligations related thereto; and Post-Closing Employment Compensation Policy | $3,172.96 | Confidential |
| Taylor Bramall | Sococo | | $1,336.97 | Confidential |
| Zoe Storey | Sococo | Employment Agreement and obligations related thereto; and Post-Closing Employment Compensation Policy | $1,034.96 | Confidential |
| Kristen Schramm | Sococo | Employment Agreement and obligations related thereto; and Post-Closing Employment Compensation Policy | $0.00 | Confidential |
| | | **Total:** | $157,612.92 | |
| Sococo Employees | Sococo | Sococo, Inc. Severance Practices and Policies | | $406,997.00 |
| **Customer Contracts** | | | | |
| ***Confidential*** | Sococo/VG | Service contracts with customers of Debtors | $0.00 | |

**Intellectual Property Licensing Agreements**

| | | | | |
|---|---|---|---|---|
| Knapp Investment Company Limited | Sococo | Intellectual Property Licensing Agreement (Sococo as licensee) | $0.00 | |

# EXHIBIT "2"



5

**Week Ended Cash Forecast**

| Description | Weekended 7-Jul-19 Forecast | Weekended 14-Jul-19 Forecast | Weekended 21-Jul-19 Forecast | Weekended 28-Jul-19 Forecast |
|---|---|---|---|---|
| **Cash on Hand - beginning of Week** | *22,928* | *4,680* | *(159,818)* | *(218,892)* |
| | | | | |
| **Cash Receipts (Actuals)** | - | - | - | - |
| **Cash Receipts (Forecast)** | *35,787* | *13,585* | *16,275* | *26,688* |
| ***Total Receipts*** | ***35,787*** | ***13,585*** | ***16,275*** | ***26,688*** |
| | | | | |
| General vendor payables | *53,755* | *71,983* | *68,934* | *47,683* |
| Consultants | - | - | - | - |
| Rent | *280* | - | *6,416* | - |
| Payroll Expenses | - | *106,100* | - | *134,000* |
| | | | | |
| US Trustee (Quarterly Fees) | - | - | - | *650* |
| Tax - Others | - | - | - | - |
| Others expenses | - | - | - | - |
| ***Total Disbursements*** | ***54,035*** | ***178,083*** | ***75,350*** | ***182,333*** |
| | | | | |
| ***Receipts from Financing Activity*** | | | | |
| ***Total Collections from Financing Activity*** | - | - | - | - |
| | | | | |
| **Net change in cash** | *(18,248)* | *(164,498)* | *(59,075)* | *(155,645)* |
| ***Ending Cash Balance- Intacct*** | ***4,680*** | ***(159,818)*** | ***(218,892)*** | ***(374,537)*** |

Zero Check

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90017.

A true and correct copy of the foregoing document entitled **OMNIBUS DECLARATION OF MARC D. KIRSHBAUM IN SUPPORT OF DEBTORS' EMERGENCY "FIRST DAY" MOTIONS** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **June 28, 2019**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Ron Bender    rb@lnbyb.com
- Nancy S Goldenberg    nancy.goldenberg@usdoj.gov
- Krikor J Meshefejian    kjm@lnbrb.com
- Lindsey L Smith    lls@lnbyb.com, lls@ecf.inforuptcy.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On **June 28, 2019**, I will serve the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **June 28, 2019,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**SERVED BY PERSONAL DELIVERY**
Hon. Theodor Albert
United States Bankruptcy Court
411 West Fourth Street, Suite 5085 / Courtroom 5B
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 28, 2019 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                          **F 9013-3.1.PROOF.SERVICE**